JAMES W. COX ET AL. v. KINSTON CAROLINA RAILROAD AND LUMBER COMPANY ET AL.

(Filed 3 April, 1918.)

## 1. Trusts—Trustees—Duration of Trusts—Leases.

Where the donor of lands in an agricultural section of country has lived thereon and farmed the same and conveyed it to his son in trust for the children of the latter until the trustee's death, or the youngest child shall have become 21 years of age, with power to sell, reinvest, etc., and hold for the purposes of the trust, and to use the same "as he may deem best for the interest of the said children, either renting it out or using and cultivating it himself, and using the rents and profits to support his family and to educate his children": *Held,* a lease by the trustee, with the right of the lessee to renew within five-year periods, extending the lessee's right for twenty years, is inoperative beyond the death of the trustee, or at least beyond the current year in which he died, the youngest child having reached maturity and the children then being entitled to the distribution of the estate under the provisions of the deed.

## 2. Same—Deeds and Conveyances—Registration—Notice.

A lessee of lands held in trust takes with notice of the authority conferred upon the trustee, under a recorded deed, to lease the premises, and where, thereunder, such authority ceases upon the death of the trustee, and a long-term lease has been made by him, in this case for five years, with renewal privileges extending it to twenty years, it is not required that the *cestuis que trust,* entitled to the distribution of the estate, at the death of the trustee, notify the lessee of their right, and the question of the reasonableness of the lease is immaterial.

## 3. Trusts and Trustees—Duration of Trusts—Courts—Extension of Time.

Where exigencies have arisen which makes it desirable and for the benefit of the *cestuis que trust* for a trustee to exceed the authority given him

in making a lease of the trust estate beyond the time fixed in the deed for
its termination, he may apply to the equity jurisdiction of the court for
the authority to make it before executing the lease, which may be granted
in proper instances.

4. **Trusts and Trustees—Termination of Trusts — Leases — Improvements—
Estoppel—Equity.**

Where the lessee of a trust estate has put improvements on the leased
premises, with notice that the lease would terminate upon the death of the
trustee, the doctrine of equitable estoppel will not apply to the *cestuis que
trust* upon the termination of the trust, especially when the lessee is per-
mitted by the lease to remove the improvements from the land.

5. **Trusts and Trustees—Termination of Trusts—Leases—Accepting Rent—
Ratification—Knowledge—Trials—Evidence—Questions for Jury.**

Where the trust estate, by the terms of a recorded deed, expires at the
death of the trustee, and he has leased the premises for a term of years,
which extends beyond the time permitted, in order for the *cestuis que
trust* to ratify the act by accepting the rent for the current year it must
be made to appear that they did so with knowledge of the facts necessary
for them to understand the effect of receiving the rents from the lessor;
. and in this case, the evidence thereof being conflicting, it was properly left
to the determination of the jury under a correct charge from the court.

6. **Trusts and Trustees—Dower—Leases—Wife's Signature—Termination of
Lease.**

Where a trustee holds an estate for the benefit of his children, with
right of dower in his wife, and he has leased the premises for a term ex-
tending after his death, when the trust was to terminate, the fact that his
widow has signed the lease, and released her dower does not give the
lessor the right to hold the lands against the children for the lifetime of
the widow.

Civil action, tried before *Stacy, J.,* and a jury, at November Term,
1917, of Lenoir.

On 1 March, 1883, James W. Cox, being the owner in fee of a tract
of 70 acres of land, lying partly in the present corporate limits of Kins-
ton and on the banks of the Neuse River, made, executed, and delivered
to J. G. Cox, his son, a deed in fee upon the following trusts therein
declared, the deed being recorded in Book 7, page 595, in the office of
the register of deeds of Lenoir County:

"But upon this special trust and confidence, nevertheless, that the
said J. G. Cox is to hold and shall hold the above-described premises
for the use and benefit of Fleta Cox, J. W. Cox, Jr., and J. P. Cox and
J. G. Cox, Jr., children of the said J. G. Cox, by his wife, J. O. Cox,
and for the use and benefit of any other child or children which shall
hereafter be born to the said J. G. Cox by his present or any other
future wife; and in the event any of his children shall die without
leaving issue, the share of one or more so dying to be held for the use
of those surviving and for the use of the issue of any having died

leaving issue, the issue to represent and to take such share as the parent would have if living. The said J. G. Cox shall have the power to use said land in whatever manner he may deem best for the interest of his said children, either by renting it out or using and cultivating it himself and using the rents and profits to support his family and to educate his children. The said J. G. Cox shall have power to sell said land in fee simple whenever he shall deem it to be the interest of his said children to do so and invest the purchase money in other real estate to be held upon the same conditions and for the same uses and trusts as these premises are held; and in case the said J. G. Cox shall die leaving a wife surviving, then she is to have dower in said land the same as she would be entitled to if the said J. G. Cox died seized of the same in fee simple. The said J. G. Cox shall not be held by the said children accountable for the rents and profits of said land during their minority or the minority of any of them, nor shall they be entitled to a division of said premises until the youngest child becomes of age, or the death of the said J. G. Cox before that period. The said J. G. Cox may allot to any of his said children on arriving of age or marrying such portion of said land as he deems an equal and just share, or to make such advances to any on arriving at age or marrying as he may deem proper and just advancement, to be accounted for in the final division of said land."

J. G. Cox, the trustee, did not sell and convey any part of the trust estate, nor did he allot to any one of his children on arriving at age or marrying his or her part of said land, or make any advancements to any one, but the entire 70 acres conveyed to him remained unsold upon his death. J. G. Cox died 23 October, 1914, leaving surviving him his wife, J. O. Cox, mentioned in the trust deed, and the following children mentioned by name in said deed: (a) Fleta Cox, who married J. B. Cummings and died many years prior to her father, leaving several children, named in the complaint; (b) J. W. Cox, Jr., one of the plaintiffs, the other two children, J. P. Cox and J. G. Cox, Jr., named in the trust deed, died in infancy before their father and without issue. There were other children born to J. G. Cox and his wife, J. O. Cox, after the execution of the trust deed, to wit, John G. Cox, R. A. Cox, and Mozelle Cox, who has intermarried with George F. Suggs. All the children of J. G. Cox who survived him were at his death more than 21 years of age, the youngest, Mrs. Suggs, having been born 17 March, 1886, and therefore being at the death of her father 27 years and 7 months old. Mrs. J. O. Cox, the wife of J. G. Cox, survived her husband and was living at the time of the trial. All of the living children and the issue of the deceased child, Mrs. Cummings, are parties to this action.

Cox *v.* Lumber Co.

J. G. Cox was 73 years of age at the time of his death and his wife 67. The oldest living child is 49. Mrs. Suggs was married before her father's death and was 21 years old prior to 1 July, 1907. On 1 July, 1907, J. G. Cox and wife, V. O. Cox (called in the deed J. O. Cox), executed a lease to the Kinston Lumber Company of a part of the land conveyed in the trust deed and described in Exhibit B attached to the answer for a period of five years, with renewable terms of five years at the option of the lessee or its assigns for the full period of twenty years; also, on 1 May, 1911, they executed another lease for an additional part of the land described in the trust deed to the Kinston Manufacturing Company for a period of fifteen years, Exhibit C of the answer. The Kinston Manufacturing Company is the assignee of the Kinston Lumber Company by mesne conveyance and holds the leases dated 1 July, 1907, and 1 May, 1911.

At the date of the lease of 1 July, 1907, J. G. Cox was 66 years of age and his wife 60. All his children at that time were of age and all but two married, and all had finished school. The probability of further issue by his then wife, 60 years of age, was remote if not, under the laws of nature, impossible.

The defendants contend (1) that the trustee had the power to make leases extending beyond the duration of the trust estate; (2) that the leases were reasonable; (3) that as Mrs. V. O. Cox joined in the execution of the two leases, whatever right she had under the trust deed passed to the lessees, and they have the right to hold such interest as against the children, the widow of J. G. Cox still living; (4) that after the death of J. G. Cox some rent was paid and received by J. W. Cox, one of the plaintiffs, on 1 January, 1915, and 1 April, 1915, and the plaintiffs are estopped by such conduct to deny the validity of the leases for the unexpired terms; (5) that the defendants had put valuable improvements on the leased premises.

The leases were duly recorded. The right to remove the buildings, fixtures and property put by the lessee on the leased premises is conferred in express terms in the lease of 1 July, 1917, and reserved to the defendants in the judgment of the court. At the time of the execution of the trust deed by J. W. Cox and wife, the land was used for agricultural purposes. The family residence was situated on it and was used as such for many years. The lease of 1 July, 1907, stipulated that the rental should be paid in equal quarterly amounts, and the lease of 1911 provided that the rental should be paid annually on 1 May. No rental under the lease of 1911 was paid to any one of the plaintiffs after the death of the trustee, J. G. Cox, and only two installments of the rent for the property covered by the lease of 1 July, 1907, that accrued during the year current of the trustee's death. In April, 1915, the

plaintiffs made demand on the defendants for the possession of the leased premises.

The plaintiffs insisted that the trustee was without power under the trust deed to make a lease that would extend beyond the duration of the trust; that such lease would be good only until the trust terminated, and that the ultimate limit of the duration of the trust was the life of the trustee, J. G. Cox. His Honor, yielding to the contention of the defendants, decided to permit evidence to be offered as to the reasonableness of the leases made by the trustee, and much of the evidence was addressed to this phase of the case.

The jury returned the following verdict:

1. Are the plaintiffs entitled to the immediate possession of the lands described in the complaint, or any part thereof? Answer: "Yes; all."

2. What is the fair annual rental value of said land? Answer: "$550."

There is a provision in the lease that before the expiration of each term of five years the lessee should give notice of its intention to continue the lease for another term of five years. The court charged the jury that if this notice was not given, and there was no agreement to the contrary, the law presumed that the lessee holds thereafter as a tenant from year to year, and that if plaintiffs more than 30 days before 1 July, 1915, it being the end of the year in which the trustee died, notified the defendants to vacate the premises, it would terminate the lease, and plaintiffs would be entitled to possession of the premises, and the jury were left free to find the facts as to whether the notice had been given or waived by the trustor, or whether there was any understanding or agreement, express or implied, which prevented plaintiffs from taking advantage of the want of notice, if the notice was not given; the defendants contending that there was evidence, even from the notice served by plaintiffs in April, 1915, after the death of the trustee, that the notices either had been regularly given before each time expired, as required by the provisions of the lease, or had been waived. The court also left to the jury the question whether the leases, one for twenty years, composed of the four terms of five years each and the other for fifteen years, constituted a reasonable exercise of the trustee's power as given by the deed. Other matters will be noticed in the opinion of the Court.

Judgment was entered upon the verdict, and defendants appealed.

*W. D. Pollock, Dawson & Manning, and Manning & Kitchin for plaintiffs.*

*W. B. Rodman, Cowper & Whitaker, and Rouse & Rouse for defendants.*

WALKER, J., after stating the case: Upon the questions submitted to the jury, the charge of the court was full and explicit. The contentions

were stated and proper instructions given in regard to them, and the jury have found the facts against the defendant's contention. But we need not longer dwell upon this feature of the case, for we are of opinion that the lease, under the admitted circumstances, could not continue beyond the death of the trustee, or, at least, beyond the end of the current year in which he died. The principal if not the pivotal question presented by the record is: Did the trustee J. G. Cox have the power to make leases extending beyond the duration of the trust?

We understand the plaintiffs' contention to be that he had no such power. Plaintiffs say it is manifest from reading the trust deed that the power given to the trustee to lease was to rent for agricultural purposes, the language of the deed being: "The said J. G. Cox shall have the power to use said land in whatsoever manner he may deem best for the interest of his said children, either by renting it out or using and cultivating it himself, and using the rents and profits to support his family and to educate his children." This language, coupled with the fact that the only use to which the land had been subjected up to that and at that time, and for some years thereafter, was agricultural, would seem to indicate that the words "to rent" as used (*noscitur a sociis*) was intended as a renting for agricultural purposes. But if the power to rent as conferred in the deed is to be given a broader and more comprehensive construction, and means to rent for such purposes, agricultural or industrial, as will yield the largest revenue for the support of the family of the trustee and educate his children, then this power cannot be so used as to extend beyond the duration of the trust, and thus bind the *cestui que trusts*—those who are the manifest objects of the bounty of the trustor —for an indefinite period, and exclude them from the possession of the property clearly intended for their benefit. All of the children at that time—1 July, 1907—were 21 and over; all had finished school; all except possibly Mrs. Suggs were self-supporting or cared for by their husbands. Mrs. Cox, the wife of the trustee, was then 60 years of age— beyond, according to the law of nature, the child-bearing age. There was the possibility that she might die, that Mr. Cox might marry a woman within the child-bearing age, and that from such union other children might be born to him, upon which event the trust would open for their benefit on equal terms with the children then living.

The defendant's reply that the very terms of the deed by which the trust was created and the condition of the donor's family show that the lease was a reasonable one, and that the power was rightly exercised; and they rely upon other facts; but all these matters were submitted to the jury, as we think after a careful review of the charge, and found against the defendants. We will, therefore, consider the case in another view of it, and one that we deem to be controlling. As a general

rule, the power must be commensurate with the act done under it and claimed to be authorized, or, at, least, justified by it. The trustee cannot exercise more power than he has acquired, nor act beyond the limit of his power. There may be cases where the court will, under peculiar circumstances, extend the operation of the trustee's act beyond the time when his trust, by the limitation of the instrument creating it, is at an end, and this is done sometimes, but generally in advance of the exercise of the power, as will appear hereafter.

The general doctrine is thus stated in 39 Cyc., 387-388: "Trustees possess general power to lease trust property on such terms, conditions, and rentals as are reasonable and customary for that class of property in the particular vicinity; provided the interests of remaindermen and those entitled to the property after the termination of the trust are not injured thereby, and provided ordinarily that the lease is not made after the termination of the trust, or made to continue after the termination of the trust, either directly or by means of renewals."

It was held in *Matter of McCaffrey,* 50 Hun (N. Y.), 371, that "upon the termination of the trust, the power of the trustees is at an end; and they have no power to renew leases or in the lease executed by them to provide for the renewal of leases." In the *McCaffrey case, supra,* the property was conveyed to a trustee to rent or lease and pay one-third of the net rentals to one daughter, another to a second daughter and one-third to a third daughter, during their natural lives, then upon the death of any one of them to convey to her descendants in fee. One of the daughters died leaving issue, and the lessee contended for a renewal of the term. The Court held that "so far as Mrs. McCaffrey's one-third was concerned the lease ceased to be valid."

The case of *Hutchinson v. Hodnett,* 115 Ga., 990, holds that while under a trust of real property for the purpose of raising income for the support, maintenance, and education of the beneficiaries, the trustee could, by implication of such a power, lease the premises, the power was not an unlimited one. The Court said as to the extent of such a power: "The lease cannot extend beyond the time the trusteeship is to last, and cannot in all cases extend even to the end of the trusteeship, the term of the lease being dependent upon the character of the property, the purposes of the trust, the custom of the place in reference to the management of like property and the conditions surrounding and the emergencies confronting the trustee in reference to the management of the property at the time the lease is extended."

Another case of similar import is *Bergengren v. Aldrich,* 139 Mass., 259, where the Court said: "An undivided third of a parcel of land was devised to a trustee to hold during the life of A, and at A's death to convey the same to the children of A. The will also empowered the trustee

to sell and convey in fee simple, or for any less estate, any part or the whole of the land. During the life of A the trustee and the owners of the undivided third joined in a lease of a portion of the land for a term of nine years, and agreed that at the expiration of the term the lease might be extended for a further term of ten years. At the expiration of the first term A was living, and the lessee demanded a renewal of the lease; *Held,* on a bill in equity for specific performance of the agreement to renew the lease, brought after the death of A, that the trustee had no authority to bind the remaindermen, and the Court would not decree specific performance as to them." It was agreed in that case that "the lease may be extended, or renewed, for a further term of ten years," at a certain specified rent.

It was held generally in the case of *In re Armory Board,* 60 N. Y., 882, that trustees under a will have no authority to lease the property for a period which extends beyond the term of their trusts, and it seems that the following cases support that view: *In re Opening of One Hundred and Tenth Street,* 81 N. Y., 32; *In re McCaffrey, supra; Gomez v. Gomez,* 147 N. Y., 195; *Newcomb v. Kittelas,* 19 Barb., 608; *Greason v. Kittelas,* 17 N. Y., 491; *In re Hubbell Trust* (Iowa), 113 N. W., 512, 135 Iowa, 637; 14 Anno. Cases, 640; *Ohio Oil Co. v. Daughetee,* 240 Ill., 361; 88 N. E., 818.

In the *Gomez case* the Court said: "The trust created by the deed, being for the life of Mrs. Gomez, terminated with her death, and with her death the powers of the trutees were, as we have seen, at an end, except to turn over and convey the trust property as directed in the deed. They, therefore, had no power under the deed to thereafter renew leases, or in the leases executed by them to provide for the renewal of leases after her decease."

In another case a trust was created by will to N. P. Daughetee and his successors forever, upon the following terms: To pay the expenses of the trust and necessary repairs and taxes and to pay over the annual proceeds to the nephew of the testator for his life and remainder over to the heirs of his body, share and share alike, forever. The trustee made oil leases for five years and as much longer as gas and oil were found in paying quantities, and the Court held he had no such power. *Ohio Oil Co. v. Daughetee,* 240 Ill., 361. The Court, in the case of *South End Warehouse Co. v. Lavery,* 107 Pac. (Calif.), 1008, considered a lease by the trustee under the following declaration of trusts, "to apply as much of the principal and interest of such property as may be necessary or proper to the support, maintenance, and education of the daughter of the testator, suitable to her condition in life, until she shall have attained the age of twenty-one years, and thereafter to pay to her two-thirds of the net income of said trust quarterly only, as long as she shall live, and

upon her death to pay over and deliver the whole of said property to her descendants in accordance with the provisions of the statute of descents and distributions of the State of California." The lease was executed on 2 February, 1904, for a term of five years from 1 June, 1904, with privilege of extension for three years at the same rental and with the privilege of a further extension for two years at a rent to be agreed on. On 11 February, 1904, the daughter died, leaving a will. The Court held that such trustees may not make a lease that will have force and effect after the termination of the trust, and consequently that the lease which they did make could not extend beyond the life of the daughter, although it was, of course, uncertain when she would die. It is also said in this case that in some of the cases which are apparently, but not really, to the contrary, it did not appear that the life beneficiaries had died, or that, in other words, the trust estate had terminated. In others of these cases, the opinions upon the question were *obiter* and not well considered, and in still others it was said that a lease by the trustees for a fixed time was not void *ab initio,* but would not extend beyond the life of the trust, as specified in the instrument creating it. In those cases where the questions was directly involved and decisions given upon it, it would appear that the courts have not disagreed as to the rule which should govern.

The Court in the case of *South End Warehouse Co. v. Lavery, supra,* (citing *Wier v. Barker,* 104 App. Div. (N. Y.), 112) held it to be settled law that leases made by trustees were valid only for a period ending with the trust term, and added: "The argument so earnestly urged, that such a rule will greatly hamper trustees holding property for a term of uncertain duration in making advantageous leases of property, is more properly addressed to the wisdom of creating such trusts without expressly authorizing leases for such terms as may be deemed prudent by the creator of the trust. That such power may be expressly given is not denied." See *Tredwell v. Tredwell,* 148 N. Y., Supp., 391.

In *Cram v. Dietrich (In re Opening One Hundred and Tenth Street),* 81 N. Y. Supp., 27, decided in 1903, the trust was for the life of the trustor's widow and upon her death the trustees were required to convey the property to her children with authority to the trustees to lease other premises from year to year or for a term of years, and they leased for twenty years the property in question, which was vacant and which the lessee improved. The Court said: "While we reach the conclusion that the trustee had no power to lease beyond the term of the trust estate for the widow, we are of opinion that such leases are valid while such trust estate endures. . . . Beyond such period the leases are void for the reason that they would cut down the estate devised, but for the duration of the life estate there was ample power to lease, and equity requires

that the lessee should be protected in the enjoyment of the property during that period."

The case of *Hubbell v. Hubbell*, 154 N. W., 867, decided in 1915, and reaffirmed *In re Hubbell's Trust*, 135 Iowa, 637, was an application for the approval by the Court of a lease proposed to be made by a trustee.

The courts are not prone to moderate the rule we have stated, as it is so easy and feasible for trustees to apply to the court and obtain its consent to the execution of a proposed lease of questionable validity, or when he entertains any doubt as to the extent of his power under the trust. It was said in *Upham v. Plankinton*, 152 Wis., 272; 140 N. W., 5: "If a trustee is given free control of real property to produce revenue therefrom, *and is not empowered to sell the property*, he may execute the trust by creating leasehold estates therein of any reasonable *duration which the testator might fairly have had in contemplation; and in such circumstances, *with judicial advice*, to wit, advice of the court, may create a leasehold estate extending beyond the termination of the trust." There the trust was to extend, in all probability, over a long but uncertain period of time. The jurisdiction of a court of equity to pass upon leases of trustees in advance of their execution and approve or disapprove them, was asserted in *Marsh v. Reed*, 184 Ill., 263, where the Court said: "A court of equity may enlarge the powers of a trustee under a will by extending the time limited by the testator for making leases of the property where exigencies have arisen which make an extension of time necessary to the carrying out of the testator's wish that the income should provide support for his wife and children." 28 A. & E. Enc., 1006, 1008; 2 Beach Trusts and Trustees, 1897 Ed., sec. 446; I Washb. Real Property (4 Ed.), sec. 307; *Upham v. Plankinton, supra*.

It will be seen from the foregoing examination of the cases that they may be divided into two classes: (1) Those where the trustee has attempted to execute the power of leasing without consulting the courts having jurisdiction; and (2) those cases where he has asked for the advice of the court, with all the beneficiaries and parties interested in the trust before it, upon the execution of the lease. The cases falling under the first class have, we think, uniformly held that a trustee has no power to execute a lease extending beyond the duration of the trust, and the reason given is that he has no power to prevent the beneficiaries of the trust from enjoying the estate as contemplated in the deed when the trust has terminated. In the second class of cases, it has been held that courts of equity have the power to enlarge the powers of the trustee as to the matter of leasing property embraced with the trust estate.

The present case is one of the exercise of power by the trustee himself without seeking the advice of the court or the approval of the beneficia-

ries of the trust, and these leases were accepted by the lessees without requiring the children of J. G. Cox, the beneficiaries of the trust, to execute them, or consent to them, although the deed of trust was of record and all the children of J. G. Cox then living were more than twenty-one years of age, and had finished their education. It is clear and settled by the authorities that a person dealing with a trustee must take notice of the terms of the trust, its duration, and the ultimate remaindermen. It appears by the terms of this trust that leases should not endure beyond the life of the trustee, as it is provided in the instrument creating the power that there might be a division of the property when the youngest child was of age or at the death of the trustee, if that was the earlier event. It is even more favorable to the plaintiffs than that, as the trustee could allot just and equal portions to his children severally as they arrived at full age or married; he might "use the land in any manner deemed best for the interest of his children, either by renting it out or using and cultivating it himself, and with the rents and profits support his family and educate his children." He is also given a power of sale and reinvestment. Whether we should hold as a matter of law that this language confined his power to ordinary agricultural leases or not, it was evidently contemplated that he should not make leases for such long terms as might afterwards and at the close of the trust by his death, hamper or embarrass the remaindermen in the free use and enjoyment of the trustor's bounty.

As long as the trustee lived, he was willing to confide in his judgment and leave the interests of his family in his keeping, but at his death, there being no substitution of a trustee and no prolongation of the trust, he plainly intended that the property should pass unencumbered to those who had been designated to take it, when that time had arrived, and whose judgment, discretion and management was substituted for that of the trustee. The lease made by the trustee must be considered as one for the full period of twenty years, as by its terms it could last for so long a time, if proper notices were given before the expiration of each of the four periods of five years. He was without power to revoke or annul it within twenty years, if the other parties complied with its terms and conditions. The defendants took the lease with notice, in law, that it would end when the trustee died.

It is not necessary to discuss the question whether it was a reasonable lease in itself, and without regard to the fact whether or not his death would terminate it. The learned judge submitted that question to the jury upon the evidence and a proper charge, and it was answered against the defendants. But it was immaterial, as we have only held, and are only required to hold in this case, that the lease ended when the trustee died, and the plaintiffs have not asked for any rents or damages except

those accruing since said event. This also disposes of the first eighteen exceptions, which are germane only to the reasonableness of the leases. We may add, in this connection, that in view of the admitted facts and circumstances in the case, the law would, perhaps, regard this as an unreasonable lease, though we are not called upon to decide as to the ground. We do not think the judge expressed any opinion on the matters embraced within the first seventeen exceptions, as he merely endeavored to place before the jury the relevant evidence upon which their opinion as to the reasonableness of the lease was asked.

The mere fact that defendants improved the property for their own benefit and to promote the better enjoyment of it for their contemplated purposes created no estoppel, as the defendants have reaped all the benefit resulting from the improvements, and when they are removed under the terms of the lease and the order of the court permitting the removal, there will be no enhancement of the value of the property, and the plaintiffs will not have gained any inequitable advantage even if the contention of the defendants be correct that plaintiffs should have given notice of the intention to end the lease at the death of the trustee. Why should plaintiffs give notice that the lease would be terminated by the death of the trustee when, under the law, it is presumed that the defendants were as well advised of it as the plaintiffs? But it is sufficient to say that the doctrine of equitable estoppel does not apply, as no material harm will result to the defendants and, besides, there has been no misconduct on the part of the plaintiffs and no misleading of the defendants to their prejudice. *Boddie v. Bond,* 154 N. C., 359; *S. c.,* 158 N. C., 204; *Patterson v. Franklin,* 168 N. C., 75, 78. The plaintiffs have simply availed themselves of their legal right; they could not foresee that the trustee would die before the twenty years had passed.

Nor do we think that the receipt of rent by the plaintiffs, or one of them, for the remainder of the current year in which the trustee died, estopped them or amounted to a ratification of the unauthorized act of the trust, in making the lease to continue after the termination of the trust, either directly or by means of renewals. It is not a question of estoppel but of ratification, and the latter does not take place without a knowledge of the facts.

We have held in *Wise v. Texas Co.,* 166 N. C., 610, that a ratification of an unauthorized act or transaction is not valid and binding unless it proceeds upon a full knowledge of the material facts relative thereto. "We, therefore, find it," said the Court, "to be of the very essence of ratification, as of an election, that it be done advisedly, with full knowledge of the party's rights," citing, among other authorities, *Baldwin v. Burrows,* 47 N. J., 199, 211, and also *Thorndike v. Godfrey,* 3 Me., at p. 432, where it is said: "We can never consider consent and ratification

Cox *v.* Lumber Co.

as implied in those cases where there is no knowledge of the facts to which it is said consent and ratification extend. This would be an effect without a cause." And 1 Clark and Skyles on Agency (1905), sec. 106, says: "No doctrine is better settled, both upon principle and authority, than this: that the ratification of an act of an agent previously unauthorized must, in order to bind the principal, be with full knowledge of all the material facts. If the material facts be either suppressed or unknown, the ratification is treated as invalid, because founded on mistake or fraud." See, also, *Owings v. Hull,* 9 Peters (U. S.), 607 (9 L. Ed., 246); Mechem on Agency (1889), sec. 129; Reinhardt on Agency (1902), sec. 340; *Town of Ansonia v. Cooper,* 64 Conn., 536, 544; 23 Am. & Eng. Enc. (2 Ed.), 889; *Marsh v. Fulton County,* 10 Wall. (U. S.), 676; *Norton v. Shelby County,* 118 U. S., 451.

In this case, it was proper for the judge, if the unauthorized act of the trustee could be ratified—which may be admitted for the sake of the argument—to submit the question to the jury, as he did, whether there was a ratification—that is, an adoption of the act of the trustee with knowledge of the facts—so that an intention to ratify it could be reasonably inferred from the facts; and on this question there was at least evidence to support the verdict against ratification, as there was some which tended strongly to show that the rent was received by only one of the defendants to the end of the current year, and that the intention was to apportion the rent for that year between the trustee and the defendants according to the time which elapsed before the trustee's death and that which remained after his death, the rent being payable quarterly during each year of the lease, which division of the rents would seem to have been made in accordance with Revisal, sec.1988, which provides: "In all cases where rents, rent charges, annuities, pensions, dividends, or any other payments of any description are made payable at fixed periods to successive owners under any instrument or by any will, and where the right of any owner to receive payment is terminable by a death or other uncertain event, and where such right shall so terminate during a period in which a payment is growing due, the payment becoming due next after such terminating event, shall be apportioned among the successive owners according to the parts of such periods elapsing before and after the terminating event."

Whether the case falls strictly within the terms of that statute we need not say, as it is clear that the parties acted upon the same principle of apportionment, not intending the act of one of them to have any greater effect. Such an apportionment has been held to be proper under statutes of a like kind when the trust is for the life of one person with remainder to another and the life tenant dies. 2 Perry on Trusts (5 Ed.), sec. 556; *Price v. Pickett,* 21 Ala., 741.

There is a class of cases where it seems to be held that the mere receipt of rent upon a lease originally void is not a ratification or continuance of the lease, as in *James v. Jenkins*, Buller's Nisi Prius, p. 96, where it was said that acceptance of rent by a tenant in tail on coming into possession is not a confirmation of the lease made by a tenant for life, which is absolutely void at his death.

And in *Robson v. Flight*, 6 De Gex J. and Smith (1865), 608 (46 Eng. Reprint, 1054), it was held: "Whether a trust may be performed or a trust power exercised by the heirs at law, which is obligatory on the trustees of the will, depends on the question whether in the exercise any thing has to be supplied by the judgment, knowledge, and discretion of the person acting in the exercise of such trust or power. A power to lease may be a trust power in the sense of its being the duty of the trustee to avail himself of it under proper circumstances; but it is to be exercised by a person selected for the purpose, and not by the individual on whom, by reason of intestacy, the law casts the estate. Acceptance by an adult beneficiary after attaining majority of rent accruing under an invalid lease is not a confirmation of the lease or a bar to relief by having the lease set aside."

The case of *Doe v. Butcher*, Douglas (5 Ed.), 50 (99 Eng. Reprint, 36), held that a lease void against a remainderman cannot be set up by his acceptance of rent after his interest vests in possession. *Lord Mansfield*, after taking the case under an advisari, stated that "there did not appear to have been any intention either to confirm the old lease or to grant a new one. Both the lessor of the plaintiff and the defendant had proceeded under a mistake, and had supposed the original lease to be good." *Doe v. Archer*, 1 B. & P., 531, was decided the same way, and also *Goodright, Lessee, v. Humphreys*, cited in the valuable note to *Doe v. Butcher*, in 99 Eng. Reprint, 36, where other like cases will be found. *Lord Mansfield* also said, in *Jenkins on the demise of Yate v. Church*, 2 Cowper's Reports, 482, where a tenant for life made a lease for twenty-one years and died before the expiration of the term, and the remaindermen permitted the lessee to keep the possession for five years, receiving rent regularly during that time: "This is a *void* lease and not voidable only. But if it were *merely voidable*, the acceptance of rent alone, unaccompanied with any other circumstances, is not a sufficient confirmation. It cannot be a confirmation unless done with a knowledge of the title at the time; or unless the remainderman lies by and suffers the tenant to lay out his money in improvements, in confidence of continuing tenant. But here it is a void lease; and in general a void lease is incapable of confirmation." We do not cite these cases for the purpose of deciding the question raised in them, but to show that the mere acceptance of rent, nothing else appearing, is not always sufficient to show ratification.

It was held in *Galewski.v. Appelbaum,* 65 N. Y. Supp., 694: "The lease purporting to be made by the landlord's grantor to the tenant was clearly invalid, in that it was not subscribed by the lessor, nor was there any evidence that the person who signed it in her behalf was her lawfully authorized agent. Nor is there any evidence that she ever ratified it. She certainly did not expressly ratify it, and there is no evidence that she ever saw it or knew of its terms. The fact that it was recorded and that she accepted rent under it raises no implication of ratification. It does not appear that she knew of its recording or knew that it purported to lease the premises for more than a year. At the time the landlord acquired the property, therefore, the tenant was holding under an invalid lease." See 24 Cyc., 912, and notes; *Carlton v. Williams,* 77 Cal., 89.

The case of *Tyson v. Chestnut,* 118 Ala., 387, is more like ours, and at p. 403, the Court said: "It is manifest upon these facts that they did not intend by receiving the note about to mature and accepting payment of it from the plaintiff to ratify the lease to him and to accept attornment by him under its terms; and this is further shown by the fact that they proceeded promptly to notify him that his possessory right had terminated, to demand possession of him, and he failing to yield upon such demand, to bring their action of unlawful detainer against him. We are not at all inclined to hold them to a ratification and adoption of the lease upon the fact of their receiving and collecting the note for the rent of the year which was about spent at the time, and in the face of their obvious intention to the contrary."

These cases all show that there was sufficient reason for leaving this case with the jury to decide the question of fact whether there was a ratification, or whether the defendants acted under a misapprehension of the facts, or at least, without full knowledge of them, and the rent was received only to the end of the current year. The discussion as to the payment of rent and ratification applies to the lease of 1907, and not to the lease of 1911 for fifteen years, as nothing was paid under that lease after the trustee's death. This but shows, though, that the rent was intended to be paid only to the end of the current year, 1 July, 1914, to 1 July, 1915.

As to the dower interest, it may be said that this being a lease by a trustee under a power, it was not necessary for the widow to have executed the lease with her husband, as it could not endure beyond his life, as we have held, and she had no interest which vested in possession until his death. It was evidently intended that she should join in the lease for the purpose of removing any cloud from it and to release any possible interest or claim she might have during its continuance, if the dower happened to be assigned out of this land; or to protect defendants

against the dower, if by any means the lease was validly extended beyond the testator's death. Besides, it does not appear that the dower interest to which she is entitled and which should be allotted, of course, according to Revisal, sec. 3084, would cover any part of the land in dispute, but on the contrary, it rather appears that the dwelling and its appurtenances are not on any part of said land. We know of no law which would compel her, in defendants' favor, to have her dower allotted in this land instead of that which is described in the statute. The widow and defendants, it may be added, certainly did not intend that the latter should have the dower in the land after the expiration of the lease, though they may have mistakenly supposed that it would extend beyond the trustee's death. We should not allow so uncertain and remote an interest, if a real interest at all, to defeat the plaintiffs' clear, substantial, and indisputable right. This contention, therefore, cannot be sustained.

It would serve no good purpose to consider all of the exceptions in detail. We believe that what we have already said embraces all of them, as those specially treated are the prominent and controlling ones, and, as we find that they cannot be sustained, the fate of the others must be the same.

We have carefully examined the case in all its phases, and have discovered no error which should induce us to change the result.

No error.