IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA23-589

Filed 6 February 2024

Caldwell County, No. 22 CVD 1171

SANU SILWAL, GITA DEVI SILWAL, and GS2017RE, LLC, Plaintiffs,

v.

AKSHAR LENOIR, INC., Defendant.

Appeal by Defendant from order entered 5 December 2022 by Judge Wesley W. Barkley in Caldwell County District Court. Heard in the Court of Appeals 29 November 2023.

> *Wilson, Lackey, Rohr & Hall, P.C., by David S. Lackey, for plaintiffs-appellees.*
>
> *Young, Morphis, Bach & Taylor, LLP, by Jarryd A. de Boer, for defendant-appellant.*

MURPHY, Judge.

The trial court abused its discretion when it denied Defendant an opportunity to file pleadings after appeal of a summary ejectment order for a trial de novo before the District Court. However, Defendant cannot show prejudice from this error, and we affirm the trial court's grant of summary judgment in favor of Plaintiffs.

## **BACKGROUND**

This dispute arises from a series of transactions involving real property between Plaintiffs, Defendant, and a third party, Robert Barlowe. From 2013 or 2014

to 2017, Plaintiffs operated a convenience store on real property ("the Premises") leased from Barlowe on Morganton Blvd. in Lenoir.

In 2017, Plaintiffs sold their business to Defendant. Contemporaneously, Defendant entered into a Lease of the Premises with Barlowe. The written Lease Agreement stated, "[t]he term . . . shall be for a period of twenty (20) years beginning [27 July 2017], through and including [31 July 2037], with option to renew in five (5) year period increments[,]" although the rent terms make clear Defendant-Tenant was bound only for the first five years, with the stated twenty years representing the maximum duration should Defendant exercise every renewal option. The Lease also required, *inter alia*, that Defendant maintain insurance covering its use of the premises. On 26 July 2017, the Caldwell County Register of Deeds recorded a Memorandum of Lease, which identified the parties to the Lease and the Premises, then recited, "[t]he term of the Lease shall be through and including [31 July 2022]. The terms of the Lease are contained in the Lease Agreement . . . ."

On 16 March 2018, Barlowe conveyed the Premises, in fee simple, to Plaintiffs for valuable consideration via a general warranty deed. At this time, Plaintiffs were aware of Defendant's Lease generally, but the parties dispute whether Plaintiffs had actual knowledge that Defendant held options to extend the lease beyond 2022. The Caldwell County Register of Deeds recorded Plaintiffs' deed on the same day of the conveyance, 16 March 2018. On the following day, the Caldwell County Register of Deeds recorded Defendant's full lease agreement for the Premises.

Initially, Plaintiffs and Defendant carried on a landlord-tenant relationship as "a matter of business" with "no like or dislike." On 3 April 2018, Plaintiffs "became aware of the full lease agreement" and thereafter sought to enforce it as written, except for the term, which they viewed as controlled by the recorded Memorandum of Lease. Specifically, they enforced the provisions requiring Defendant to maintain insurance, pay late fees, and pay a share of property taxes.

On 21 January 2022, Plaintiffs notified Defendant to "vacate the leased premises by the end of the day on [31 July 2022]" pursuant to the recorded Memorandum of Lease. Defendant responded on 1 March 2022 by purporting to exercise its five-year renewal option "for the period beginning [1 August 2022.]" Plaintiffs countered that the recorded Memorandum of Lease controlled and only bound them through 31 July 2022.

On 1 August 2022, when Defendant had not vacated the Premises, Plaintiffs initiated summary ejectment proceedings in small claims court. On 2 September 2022, the small claims court entered a judgment for Plaintiffs and ordered Defendant be removed from the Premises. Defendant appealed the judgment to District Court and executed a bond to stay execution on appeal, pursuant to N.C.G.S. § 42-34. Under this bond, Defendant paid $2,061.00 monthly—the rental amount contemplated under the five-year renewal lease term—to the Clerk of Superior Court.

In District Court, Plaintiffs moved for summary judgment. In response, Defendant moved for further pleadings, seeking to file an answer with affirmative

defenses, a counterclaim seeking declaratory judgment, and an alternative third-party complaint against Barlowe seeking $25,000.00 damages for breach of contract. Defendant also made filings in opposition to summary judgment, including interrogatories of Plaintiff Sanu Silwal, an affidavit of Barlowe, an affidavit of Defendant's president, and a deposition of Silwal. The trial court held a hearing on both motions, then granted Plaintiffs' motion and denied Defendant's motion. It further ordered the Clerk to release all rents to Plaintiffs. Defendant moved to set aside the order of summary judgment, which the District Court also denied. Defendant appealed to this Court and executed another bond to stay execution of the order of summary judgment on appeal.

## ANALYSIS

Defendant challenges the trial court's grant of summary judgment to the Plaintiffs on both procedural and substantive grounds. Procedurally, it argues the trial court abused its discretion by denying its motion for further pleadings and, having done so, erred in ruling on Plaintiffs' motion for summary judgment before the pleadings were complete. Substantively, it raises several estoppel-based affirmative defenses, arguing Plaintiffs were bound by the options to renew which were not recorded prior to the deed to Plaintiffs.

### A. Pleadings

Defendant argues the trial court abused its discretion by denying its motion for further pleadings and relatedly erred by ruling on Plaintiffs' motion for summary

judgment without offering Defendant and Barlowe an opportunity to file pleadings. While the trial court abused its discretion by denying Defendant's motion, the error does not merit reversal, and the court did not err by entering summary judgment without permitting Defendant or Barlowe to file pleadings.

Summary ejectment is a small claim action before the magistrate and appealable to the District Court for a trial de novo. N.C.G.S. §§ 7A-210(2), -211, -228(a)-(b) (2023). On appeal to the District Court, the ordinary rules of civil procedure apply, subject to specialized rules prescribed by N.C.G.S. §§ 7A-210 to -239. *Jones v. Ratley*, 168 N.C. App. 126, 131 (Tyson, J., dissenting) ("*Duke Power* [*Co. v. Daniels*, 86 N.C. App. 469 (1987),] supports the application of the general rules to all cases in [D]istrict [C]ourt, including those that originate in small claims court but are appealed for trial *de novo*."), *dissent adopted per curiam*, 360 N.C. 50 (2005); N.C. R. Civ. P. 1; N.C.G.S. § 1A-1 (2022) ("These rules shall govern the procedure in the [S]uperior and [D]istrict courts of the State of North Carolina in all actions and proceedings of a civil nature except when a differing procedure is prescribed by statute.").

"The North Carolina Rules of Civil Procedure are part of the General Statutes. Accordingly, interpreting the Rules of Civil Procedure is a matter of statutory interpretation. A question of statutory interpretation is ultimately a question of law for the courts. We review conclusions of law de novo." *In re E.D.H.*, 381 N.C. 395, 398 (2022) (marks and citations omitted). We review a trial court's ruling on a motion

for leave for abuse of discretion. *Cf. Henry v. Deen*, 310 N.C. 75, 82 (1984) ("A motion to amend is addressed to the discretion of the trial court. Its decision will not be disturbed on appeal absent a showing of abuse of discretion.").

## 1. Defendant's Motion for Further Pleadings

We first consider whether Defendant needed leave to file its pleadings or could have done so as a matter of course. Defendant argues, "if the counterclaims or third-party claims are appropriate, the [trial] judge has no discretion but to allow the motion [for further pleadings]."

On appeal to the District Court for a trial de novo, the parties may, but are not required to, file further pleadings, including those jurisdictionally barred from small claims court. N.C.G.S. § 7A-220 (2023) ("On appeal from the judgment of the magistrate for trial de novo before a [D]istrict [Court] judge, the judge shall allow appropriate counterclaims, cross claims, third party claims, replies, and answers to cross claims, in accordance with [N.C.]G.S. [§] 1A-1, et seq."); *J. S. & Assocs. v. Stevenson*, 265 N.C. App. 199, 201 (2019) ("[W]hen an aggrieved party properly brings an appeal from small claims court to [D]istrict [C]ourt pursuant to [N.C.G.S. §] 7A-228, the parties may also bring their counterclaims, cross-claims, and third-party claims pursuant to [N.C.G.S. §] 7A-220."); *4U Homes & Sales, Inc. v. McCoy*, 235 N.C. App. 427, 435 (2014) ("As a result[] [of N.C.G.S. §§ 7A-219 to -220,] a defendant in a summary ejection action who wishes to assert counterclaims that have a value greater than the jurisdictional amount applicable in small claims court may either

assert their claims on appeal to the District Court from an adverse decision by the magistrate or assert those claims in an entirely separate action."); *Fickley v. Greystone Enters.*, 140 N.C. App. 258, 261-62 (2000) ("[The] plaintiffs had the opportunity to file . . . a counterclaim in an appeal from the magistrate's judgment[.]").

Plaintiffs acknowledge "[N.C.]G.S. [§] 7A-220 does not require a [d]efendant to obtain leave of court to file any of the pleadings that Defendant sought to file"; nonetheless, they argue that "Defendant having unnecessarily sought leave of court, the trial court did not err in denying Defendant's Motion for Additional Pleadings." We considered and rejected a similar argument in *Coble Cranes & Equip. Co. v. B & W Utils., Inc.*, 111 N.C. App. 910 (1993). There, the trial court granted summary judgment for the plaintiff without ruling on the defendant's motion to amend her answer. *Id.* at 912. However, at that stage, the defendant "had an absolute right to amend and thus did not need to file a motion[,]" and we rejected the plaintiff's argument that "this right justified the trial court's action with regard to [the] defendant's motion." *Id.* at 913. Rather, we saw "no reason the trial court should not have allowed [the] defendant's motion to amend" because she "filed the motion in a timely manner, and the plaintiff would not have suffered any discernible prejudice by the judge's allowance of the motion." *Id.* Therefore, we held "the trial court's failure to rule on the motion was error[.]" *Id.* at 912.

Here, the trial court similarly abused its discretion by denying Defendant leave to file the pleadings, which it could have filed as a matter of course. Although N.C.G.S. § 7A-220 does not prescribe a timeline for pleadings on appeal for a trial de novo before a District Court judge, Defendant's motion was timely, whether measured from the judgment of small claims court or Defendant's notice of appeal therefrom. *See* N.C. R. Civ. P. 12(a)(1); N.C.G.S. § 1A-1 (2022). Further, there is no reason to believe Plaintiffs "would [] have suffered any discernible prejudice by the judge's allowance of the motion." *Coble Cranes*, 111 N.C. at 913.

This abuse of discretion, however, does not merit reversal. Despite the error, in *Coble Cranes*, we affirmed the trial court's entry of summary judgment because "[t]he trial court's failure to allow [the] defendant's motion to amend . . . did not prejudice the defendant[.]" *Id.* Defendant, here, has likewise not suffered prejudice because, as the trial court noted, "[a]ll of [Defendant's affirmative defenses and counterclaim for declaratory judgment] were argued and considered by the [c]ourt during the Motion for Summary Judgment" and "Defendant may bring an independent action against [] Barlowe[.]"[1]

---

[1] Moreover, Defendant's claim against Barlowe was not appropriate for third-party practice: "a defendant, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to him *for all or part of the plaintiff's claim against him*." N.C. R. Civ. P. 14, N.C.G.S. § 1A-1 (2023) (emphasis added). However, Defendant alleges Barlowe is liable to it for damages upon an independent cause of action. A defendant may not serve a third-party complaint merely because the third-party claim involves common factual issues. *See, e.g.*, *McCollum v. McCollum*, 102 N.C. App. 347, 348 (1991) ("[The plaintiff's claims against [the] defendant] were for an absolute divorce and for an equitable distribution of the marital property.

Although the trial court's improper denial of Defendant's motion does not, by itself, merit reversal, two circumstances here were not present in *Coble Cranes*: (1) the trial court granted Plaintiffs' motion for summary judgment without Defendant having filed any answer and (2) Defendant had sought to plead a third-party complaint. We consider these circumstances in our discussion of Defendant's further arguments.

**2. Entry of Summary Judgment Absent Defendant's Answer**

We next consider whether the trial court erred by entering summary judgment for Plaintiffs without permitting Defendant to first file its answer.

Defendant cites *Alpine Village, Inc. v. Lomas & Nettleton Financial Corp.*, 27 N.C. App. 403 (1975), *cert. denied*, 289 N.C. 302 (1976), for the proposition that summary judgment before Defendant had the opportunity to file its answer was premature. Although Rule 56 of our Rules of Civil Procedure does not fix an appropriate time for the trial court to enter summary judgment, N.C. R. Civ. P. 56, N.C.G.S. § 1A-1 (2023), in *Village, Inc.*, we held the trial court erred by entering summary judgment for the plaintiffs without giving the defendant an opportunity to file its answer. *Village, Inc.*, 27 N.C. App. at 404-05. There, the trial court simultaneously denied the defendant's motion to dismiss and granted the plaintiff's motion for summary judgment. *Id.* at 403. In doing so, the trial court did not consider

---

Obviously, the [third-party] [b]ank could not be held liable to [the defendant] should an absolute divorce be granted.").

the defendant's defective affidavit, which, while raising genuine issues of material fact, did not comply with Rule 56 of our Rules of Civil Procedure. *Id.* at 404. On appeal, we held the trial court entered summary judgment prematurely because the trial court's denial of the defendant's motion to dismiss gave it an additional 20 days to file its answer, and the entry of summary judgment before this timeframe deprived the defendant of the opportunity to plead the defective affidavit's substance in its answer. *Id.*

However, *Village, Inc.* acknowledged "summary judgment for [a] claimant, under some circumstances, might be appropriate before the responsive pleading has been filed or even before the time to file responsive pleadings has expired." *Id.* In *Kavanau Real Estate Trust v. Debnam*, we rejected a similar argument and held there was "no justifiable reason for delaying entry of summary judgment" because "[the defendants opposing summary judgment] had nearly four months to prepare defenses and to come forward with material questions of fact with which to defeat the motion for summary judgment" and still had "not come forward with such questions of fact" and therefore did not satisfy their burden "to set forth specific facts showing that there is a genuine issue for trial." *Kavanau Real Est. Tr. v. Debnam*, 41 N.C. App. 256, 261-62 (1979).

Here, unlike *Village, Inc.*, Defendant made a non-defective filing in opposition to summary judgment, which included Silwal's response to interrogatories, an affidavit of Barlowe, an affidavit of Defendant's president, and a transcript of Silwal's

deposition. Moreover, Defendant argued, and the trial court considered, its affirmative defenses at the hearing. Defendant, therefore, had a full opportunity "to prepare defenses and to come forward with material questions of fact with which to defeat the motion for summary judgment[,]" *id.* at 261, so the trial court did not err by ruling on Plaintiffs' motion for summary judgment without permitting Defendant to file pleadings.

**3. Entry of Summary Judgment Absent Barlowe's Pleadings**

Defendant further argues "Barlowe should have been afforded an opportunity to plead or otherwise defend the action." Unlike Defendant, Barlowe is not a party to this action, so we consider whether Barlowe was a necessary party such that his non-joinder voided the trial court's jurisdiction. *See J & B Slurry Seal Co. v. Mid-South Aviation, Inc.*, 88 N.C. App. 1, 16-17 (1987) ("[T]he necessary joinder rules of N.C.G.S. [§] 1A-1, Rule 19 place a mandatory duty on the [trial] court to protect its own jurisdiction to enter valid and binding judgments . . . . [A] judgment without such necessary joinder is void[.]").

> The [trial] court may determine any claim before it when it can do so without prejudice to the rights of any party or to the rights of others not before the court; but when a complete determination of such claim cannot be made without the presence of other parties, the court shall order such other parties summoned to appear in the action.

N.C. R. Civ. P. 19(b), N.C.G.S § 1A-1 (2023).

> Necessary parties must be joined in an action. Proper parties may be joined. A necessary party is one who is so

> vitally interested in the controversy that a valid judgment cannot be rendered in the action completely and finally determining the controversy without his presence. A proper party is a party who has an interest in the controversy or subject matter which is separable from the interest of the other parties before the court, so that it may, but will not necessarily, be affected by a decree or judgment which does complete justice between the other parties.

*Karner v. Roy White Flowers, Inc.*, 351 N.C. 433, 438-39 (2000) (marks and citations omitted).

Defendant sought to bring a third-party complaint against Barlowe, alleging that "[i]f the [c]ourt finds that [Plaintiffs] are not bound by the Lease, then and only then is [] Barlowe liable in breach of contract with [Defendant]." Any interest Barlowe had in the controversy between Plaintiffs and Defendant was separable in that the resolution of Plaintiffs' summary ejectment claim against Defendant did not resolve Defendant's potential breach of contract claim against Barlowe and thereby prejudice Barlowe. The trial court did not err by granting Plaintiffs summary judgment against Defendant without affording Barlowe "an opportunity to plead or otherwise defend the action[,]" to which he was neither joined nor a necessary party.

Having considered the trial court's denial of Defendant's motion for further pleadings and simultaneous entry of summary judgment, we conclude the trial court's abuse of discretion in denying Defendant leave to plead an answer and third-party complaint does not merit reversal, and the trial court did not err by ruling on Plaintiffs' motion for summary judgment without these pleadings.

## B.  Summary Judgment

Turning to the merits of summary judgment, Defendant argues "the trial court erred when it granted Plaintiffs' summary judgment and, based on the record, should have granted summary judgment in favor of [] Defendant."[2]

> The standard of review for an order of summary judgment is firmly established in this state.  We review a trial court's order granting or denying summary judgment de novo. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.  All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party.  The showing required for summary judgment may be accomplished by proving an essential element of the opposing party's claim does not exist, cannot be proven at trial, or would be barred by an affirmative defense[.]

*Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 523 (2012) (marks and citation omitted); *see* N.C. R. Civ. P. 56; N.C.G.S. § 1A-1 (2023).

Defendant raises three estoppel-based affirmative defenses, arguing Plaintiffs were bound by Defendant's options to renew the Lease, despite the options' absence from the recorded Memorandum of Lease.  We first consider the effect of the

---

[2] In its reply brief, Defendant argues "there is a substantial amount of evidence in the record that creates genuine issues of material fact[.]"  However, Defendant does not point to any specific issues of fact in support of this argument.  Although the parties dispute whether Plaintiffs had actual knowledge that Defendant held options to extend the lease beyond 2022, this issue is not material under the Connor Act.  *See Bourne v. Lay & Co.*, 264 N.C. 33, 35 (1965).

Memorandum of Lease under the Connor Act, then address each of Defendant's affirmative defenses.

**1. The Connor Act**

The trial court granted Plaintiffs' motion for summary judgment based on its conclusion they were not bound by the renewal terms in Defendant's Lease because the recorded Memorandum of Lease omitted terms. Reviewing this conclusion de novo, we agree.

Under the Connor Act,

> [n]o . . . lease of land for more than three years[] . . . is valid to pass any property interest as against lien creditors or purchasers for a valuable consideration from the . . . lessor but from the time of its registration in the county where the land lies[.] . . . Unless otherwise stated either on the registered instrument or on a separate registered instrument duly executed by the party whose priority interest is adversely affected, [] instruments registered in the office of the register of deeds have priority based on the order of registration as determined by the time of registration[.]

N.C.G.S. § 47-18 (2023); *see also Greaseoutlet.com, LLC, v. MK South II, LLC*, 290 N.C. App. 17, 22 & n.2 (2023), *disc. rev. denied*, __ N.C. __ (2024) (summarizing the act's legislative history, purpose, and nomenclature). "Actual knowledge, however full and formal, of a grantee in a registered deed of a prior unregistered deed or lease will not defeat his title as a purchaser for value in the absence of fraud or matters creating estoppel." *Bourne*, 264 N.C. at 35.

A tenant may, but need not, record the full lease agreement to protect its leasehold interest; rather, "[i]t is sufficient under the Connor Act to register a memorandum, rather than the actual lease, so long as the memorandum recites the lease's key terms sufficient to put the world on record notice the extent of tenant's leasehold interest." *Greaseoutlet.com, LLC*, 290 N.C. App. at 23; *see* N.C.G.S. § 47-118 (2023). Such a memorandum has "the same legal effect as if the written lease agreement had been registered in its entirety" and "shall set forth: (1) The names of the parties thereto; (2) A description of the property leased; (3) The term of the lease, including extensions, renewals and options to purchase, if any; and (4) Reference sufficient to identify the complete agreement between the parties." N.C.G.S. § 47-118(a), (c) (2023).

Here, the recorded Memorandum of Lease inaccurately reflected, "[t]he term of the Lease shall be through and including [31 July 2022,]" when the actual Lease Agreement included options to renew beyond 31 July 2022. Plaintiffs contend, in essence, that this Memorandum recorded all parts of the Lease Agreement except the renewal terms. Their actions were consistent with this view: Plaintiffs enforced the Lease, including provisions not stated in the Memorandum, then sought to evict Defendant upon expiration of the original five-year term.

We recently considered a nearly identical issue in *Greaseoutlet.com, LLC*. There, the plaintiff-tenant entered into a five-year lease for industrial property. *Greaseoutlet.com, LLC*, 290 N.C. App. at 19. The lessor recorded a memorandum of

lease accurately stating the five-year term and expressly incorporating all subsequent amendments. *Id.* at 19, 23. Four months later, the plaintiff and lessor amended the lease to add two successive five-year options to renew. *Id.* at 19. Neither party to the lease recorded the lease as amended. *Id.* Three years later, the original lessor sold the property to the defendant in fee simple, and the defendant promptly recorded its deed. *Id.* at 21. Upon expiration of the original term, the defendant refused to honor the plaintiff's exercise of its option. *Id.* at 19. We held the memorandum, despite purporting to incorporate the amended option to renew, was "insufficient to bind [the defendant] beyond the [expressly stated] initial term" because it failed to actually specify any then-anticipatory amended renewal terms and "[o]ur General Assembly requires that a memorandum of lease *shall* state the term of the lease, *including extensions/renewals*[.]" *Id.* at 24.

Here, the Memorandum of Lease likewise reflected the written Lease Agreement's initial term while omitting renewal terms. We agree with the trial court and Plaintiffs that the recorded memorandum bound Plaintiffs to the Lease for the recited five-year term, but not beyond.

## 2. Defendant's Payment of Rent Pursuant to Its Bond to Stay Execution

We turn to Defendant's estoppel-based arguments as to why Plaintiffs should nevertheless be bound to the Lease's unrecorded renewal terms. The first of these is that Plaintiffs have implicitly agreed to renew Defendant's Lease by accepting

increased rent for the second five-year term via Defendant's bond to stay execution on appeal of summary ejectment judgment.

Landowners who accept rent pursuant to a preexisting but unrecorded lease are not estopped from denying the validity of the lease. *Bourne*, 264 N.C. at 35-36 (asking "[a]re the plaintiffs estopped from denying the validity of [the] defendant's lease by accepting rent in accordance with its terms for a period of two years and one month?" and answering "in the negative"). However, Defendant relies on *Coulter v. Capitol Finance Co.*, 266 N.C. 214 (1966), to argue that "[b]y accepting and not disputing the increased rental amount, [] Plaintiffs accepted the lease for the second five year term."

In *Coulter*, our Supreme Court, considering a lease with an option to extend at a higher rent, held that a tenant's payment of the increased rent upon the expiration of the original term and the landlord's acceptance without comment "clearly indicate[d] an intent on the part of the lessee to exercise its option to extend the term . . . and a similar intent on the part of the lessor to waive the notice to which she was entitled." *Coulter v. Capitol Fin. Co.*, 266 N.C. 214, 219 (1966). Our Supreme Court noted that the lessor, having not received notice of the tenant's intent to exercise its option, would have been entitled to evict the tenant upon the expiration of the original term. *Id.* at 218. However, the landlord was also entitled to waive notice and treat the tenant as having extended the lease. *Id.* Thus, "[w]hen [] the original lessee[] held over after the expiration of its [original] term, [paid] rent at the

rate which was to apply only if it exercised its option to extend the term . . . and the lessor accepted this payment, the extension of the lease was effected[.]" *Id.* at 220.

This case is distinguishable. In *Coulter*, the landlord could have, but did not, evict the tenant from the premises. *Id.* at 218. Here, however, Plaintiffs sought to evict Defendant from the Premises. Their eventual receipt of rent while Defendant remains in possession, pursuant to the eviction procedure, permits no inference that Plaintiffs intended to be bound by the Lease's unrecorded renewal terms. S*ee* N.C.G.S. § 42-34 (2023) ("[I]t shall be sufficient to stay execution of a judgment for ejectment if the defendant appellant pays to the [C]lerk of [S]uperior [C]ourt any rent in arrears . . . and signs an undertaking that he or she will pay into the office of the [C]lerk of [S]uperior [C]ourt the amount of the tenant's share of the contract rent as it becomes due periodically after the judgment was entered.").

Defendant is correct that these payments were made at the renewal rate rather than the original. However, N.C.G.S. § 42-34(b) provides that Defendant "pay into the office of the [C]lerk of [S]uperior [C]ourt the amount of the tenant's share of the contract rent as it becomes due periodically after the judgment was entered[,]" and, "[i]f either party disputes the amount of the payment[,] . . . *the aggrieved party* may move for modification of the terms of the undertaking before the [C]lerk of [S]uperior [C]ourt or the [D]istrict [C]ourt." N.C.G.S. § 42-34(b) (2023) (emphasis added). Assuming, *arguendo*, the rent should have been at the rate under the original recorded term, our statutes gave *Defendant* the option to dispute the amount.

Plaintiffs were under no burden to police the terms of Defendant's bond lest they estop themselves.

Plaintiffs eventual receipt of rent, pursuant to Defendant's bond to stay execution of summary ejectment, does not estop them from executing the judgment upon dissolution of the stay.

### 3. Plaintiffs' Enforcement of the Lease

Defendant further argues that Plaintiffs are subject to the unrecorded options to renew because they relied on the Lease, enforced some of its provisions not mentioned in the Memorandum of Lease, and used it as "the basis for [their] Complaint."

"Quasi-estoppel has its basis in acceptance of benefits and provides that [w]here one having the right to accept or reject a transaction or instrument takes and retains benefits thereunder, he ratifies it, and cannot avoid its obligation or effect by taking a position inconsistent with it." *Carolina Medicorp v. Bd. of Trustees of State Med. Plan*, 118 N.C. App. 485, 492 (1995) (alteration in original) (marks omitted). "[A] ratification of an unauthorized act or transaction is not valid and binding unless it proceeds upon a full knowledge of the material facts relative thereto . . . . [T]he very essence of ratification, as of an election, [is] that it be done advisedly, with full knowledge of the party's rights[.]" *Cox v. Kingston Carolina R.R. and Lumber Co.*, 175 N.C. 299, 310 (1918).

Having already held Plaintiffs were bound only to the initial recorded term of the Lease, we conclude quasi-estoppel does not apply here. Although Plaintiffs accepted the benefits of the Lease, including portions not reflected in the Memorandum of Lease, they did so without any "right to accept or reject" the Lease. *See Carolina Medicorp*, 118 N.C. App. at 492.

Defendant resists this by arguing "Plaintiffs needed a declaratory judgment before they could cite to the [L]ease to [] Defendant[] without adopting or ratifying the [L]ease." However, Defendant cites no authority to support this assertion, and such a rule would permit Plaintiffs to have unwittingly ratified the lease without full knowledge of their rights, in contrast to *Cox*'s holding that "the very essence of ratification, as of an election, [is] that it be done advisedly, with full knowledge of the party's rights[.]" *Cox*, 175 N.C. at 310.

Plaintiffs did not ratify the portions of the untimely-recorded Lease Agreement to which they were *not* bound by enforcing the portions to which the parties *were* bound.

## 4. **Defendant's Prior Transaction with Plaintiffs**

Lastly, Defendant contends that Plaintiffs are estopped from denying the Lease based on their 2017 transaction with Defendant. According to Defendant, Plaintiffs understood the transaction "was conditioned on Defendant securing a long-term lease with [Barlowe,]" and "are now estopped from denying the very lease that was the condition and part of the transaction."

North Carolina courts have also long recognized the doctrine of equitable estoppel, otherwise known as estoppel in pais. Generally speaking, the doctrine applies

> when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts.

> In such a situation, the party whose words or conduct induced another's detrimental reliance may be estopped to deny the truth of his earlier representations in the interests of fairness to the other party. In applying the doctrine, a court must consider the conduct of both parties to determine whether each has conformed to strict standards of equity with regard to the matter at issue.

*Whitacre Partnership v. Biosignia, Inc.*, 358 N.C. 1, 16-17 (2004) (marks and citations omitted); *see Bourne*, 264 N.C at 37 ("It is essential to an equitable estoppel that the person asserting the estoppel shall have done or omitted some act or changed his position in reliance upon the representations or conduct of the person sought to be estopped. A change of position which will fulfill this element of estoppel must be actual, substantial, and justified.").

Defendant has not identified any act, representation, or omission by Plaintiffs that would justify its reliance on Plaintiffs to honor its Lease with Barlowe should Plaintiffs acquire the Premises. Without this, Defendant has not forecasted evidence sufficient to establish its affirmative defense of equitable estoppel.

Having considered the Connor Act and Defendant's estoppel arguments, we hold the recorded Memorandum of Lease bound Plaintiffs for only the term stated in the Memorandum of Lease and not to the options to renew not stated therein. We further hold Plaintiffs were not bound to the unrecorded renewal terms by adoption or estoppel.

## CONCLUSION

On appeal from small claims court for a trial de novo, Defendant had the right to plead as a matter of course, and the trial court abused its discretion by denying, Defendant's motion for leave to plead an answer and third-party complaint against Barlowe. Nevertheless, this abuse of discretion did not prejudice Defendant and does not merit reversal, and the trial court did not err in ruling on Plaintiffs' motion for summary judgment without these pleadings where Defendant made a filing in opposition to summary judgment and Barlowe was not a necessary party.

The trial court did not err on the merits of summary judgment where the recorded Memorandum of Lease bound Plaintiffs only to the now-elapsed original term stated in the Memorandum of Lease and where Plaintiffs neither adopted nor were estopped from denying the Lease's unrecorded options to renew.

AFFIRMED.

Chief Judge DILLON and Judge GORE concur.