GEORGE W. MOTE ET AL. *v.* WHITE LAKE LUMBER CO.

(Filed 3 November, 1926.)

**1. Deeds and Conveyances—Contracts—Timber.**

Deeds for standing timber conveys a fee simple interest in such timber determinable as to all such timber that is not cut and removed within the time specified in the contract.

**2. Same—Extension Period—Option—Payment of Consideration.**

Where a deed conveys timber growing upon land to be cut and removed within a stated time, with extension periods upon a further consideration to be paid within each of such periods or at stated times, the contract for each such period is but an option until the consideration is paid, and such consideration so to be paid, is necessary for the acquisition by the vendee of the extension rights accorded him.

**3. Equity—Estoppel—Deeds and Conveyances—Timber Deeds—Extension Periods.**

Where the rights to cut and remove timber growing upon lands are acquired by purchase and conveyance from the original grantee, who agrees and covenants to pay the consideration for the extension periods therein granted, the vendor is estopped in equity from claiming forfeiture of the extension period and a revesting of the title in himself, by asserting to his vendee's purchaser that all moneys necessary to secure this extension had been paid by the original grantee and knowingly permitting extensive operations to be made for the continued cutting and removal of the timber.

**4. Same—Recovery of Extension Price—Consideration.**

Where equity will estop the grantor in a timber deed from enforcing a forfeiture of the rights of the purchaser of his vendee in cutting and removing the timber, etc., because of his vendee's failure to pay the consideration of the extension period, the vendor may recover the amount of this consideration from such purchaser.

CIVIL ACTION, tried before *Daniels, J.,* at April Term, 1926, of BLADEN.

This action was instituted on 8 February, 1926, by the plaintiff and his wife against the defendant.

On 22 January, 1906, Silas Norris conveyed to E. W. Boatright certain rights to cut and remove timber from the land now owned by the plaintiffs. Boatright conveyed his interest under said timber deed to the Bell Lumber Co. Thereafter, the Bell Lumber Co. conveyed the timber rights to the defendant, White Lake Lumber Co. Norris died and his land was divided among his heirs at law, and under said division the plaintiffs became the owners of certain lots of the Norris land.

In the deed from the Bell Lumber Co. to the defendants, White Lake Lumber Co., appears the following covenant: "And we, the grantors herein, hereby jointly and severally covenant and agree, binding ourselves, our heirs, executors, administrators, successors and assigns, to pay out of our own funds at the proper times to the proper parties all extension money required to keep all the timber deeds hereinbefore mentioned in full force and effect, save only that in all cases where a longer period than seven years from and after the extension maturing date in the year 1918 has been, or may hereafter be granted, all extension money becoming due after the lapse of such period of seven years shall be payable by the grantee, out of its own or their funds."

On 12 May, 1922, the plaintiffs executed and delivered to the defendant a timber deed for the timber on the lots of the Norris land owned by the plaintiffs, assuring to the defendant "the right to cut the timber and exercise the rights, easements, etc., upon so much of the Silas Norris land as is now owned by them (plaintiffs) until said date of 22 January, 1931, the final limit of the extension period." This conveyance executed by the plaintiffs contained a clause as follows: "And whereas, under the terms of said deed, by the Bell Lumber Co. to the White Lake Lumber Co. the said Bell Lumber Co. agreed to pay all extension moneys that might accrue, due upon the timber as described in said deeds of Silas Norris to E. W. Boatright up to and including 22 January, 1926; and whereas, the said George W. Mote, as owner of that portion of the original tracts of land on which the timber was sold as hereinbefore described, has received full payment of all extension money to which he is entitled on account of his ownership of a portion of said original tracts up to and including 22 January, 1926," etc. The said deed from plaintiffs to defendant, after describing the property contained a further clause as follows: "Upon condition, however, that should said timber be not cut and removed on or before 22 January, 1926, then the said White Lake Lumber Co. shall pay to George W. Mote, his heirs or assigns, the sum of $100.00 per annum for each year of said additional period after 22 January, 1926, in advance of or before 22 January of each year of said additional five-year period," etc.

The plaintiffs contended that under the terms of the deed to the defendant that there was the sum of $100.00 extension money due them

on 22 January, 1926, and that said extension money had not been paid by the defendant as required by said contract, and that, as the defendant had entered upon the land and built a tramroad thereon and had begun cutting and removing the timber without the payment of said extension money that the defendant should be restrained from further cutting the timber, and also should be required to pay the plaintiffs for the timber already cut upon said premises.

Angus Cromartie, agent of defendant, testified that a few days prior to 22 January, 1926, he read a deed from the plaintiffs to the White Lake Lumber Co., which contained a clause reciting that the plaintiffs had received all the extension money up to and including 22 January, 1926, and that in order to be entirely certain about the matter he approached the plaintiff, G. W. Mote, and stated to him that he desired to stake out a right of way across the land referred to, and "asked Mr. Mote if he contended that anything was to be paid him by the White Lake Lumber Co. for the year 1926 under the terms of the deed of 12 May, 1922?" George W. Mote "then told him that he had been paid for the year 1926, and that nothing was or would be due or owing to him on that account by the White Lake Lumber Co.; and thereupon said Mote showed (witness) the route that he preferred the tramroad of defendant should take across said land, and helped to pick out a place across said land to put the tramroad." The witness further testified that the plaintiffs had full knowledge of all the defendant was doing, saw from day to day the progress of the work, and never gave any intimation that they had or would have any claim adverse to the rights of the defendant until 8 February, 1926, when this action was instituted.

The evidence of defendant was not contradicted by the plaintiffs so far as the record discloses. The defendant, in his answer, denied its liability to the plaintiffs, but offered, however, to pay the sum of $100.00 extension money in dispute. This offer was declined by the plaintiffs.

The trial judge rendered the following judgment: "This cause, coming on to be heard and being heard at this term, and the court being of the opinion that the language of the deed or contract referred to in the second article of the complaint is such that a forfeiture of the defendant's title to the timber in controversy should not be declared, it is ordered, adjudged and decreed that the restraining order heretofore issued herein be and the same is hereby dissolved, and that the prayer of the plaintiffs for a perpetual injunction be and the same is denied.

It is further ordered, adjudged and decreed that the plaintiffs have and recover of the defendant the sum of $100.00 and interest thereon from 22 January, 1926, and the cost of this action to be taxed by the clerk.

It is further ordered, adjudged and decreed that the defendant do enter into, execute and deliver to the clerk of the court a good and solvent bond in the sum of $1,500.00, in favor of the plaintiffs herein and providing indemnity for them against loss or damage on account of cutting and removing the timber in controversy and exercising the rights and privileges provided for in the deed or contract already referred to herein in the event they should finally be adjudged and entitled to such damages, which bond shall be approved by said clerk."

From the judgment so rendered plaintiffs appealed.

*E. F. McCulloch and A. McL. Graham for plaintiffs.*
*J. Bayard Clark for defendant.*

BROGDEN, J. Deeds for standing timber convey a fee-simple interest in such timber, determinable as to all such timber as is not cut and removed within the time specified in the contract. *Austin v. Brown,* 191 N. C., 624.

In *Timber Co. v. Wells,* 171 N. C., 262, *Justice Hoke,* in discussing the nature and effect of extension clauses in timber deeds, says: "The cases on the subject are to the effect, further, that a stipulation of the kind now presented, providing for an extension of the time within which the timber must be cut, is in the nature of an option, and it is held by the great weight of authority that contracts of this character do not of themselves create any interest in the property, but only amount to an offer to create or convey such an interest when the conditions are performed and working a forfeiture when not strictly complied with."

Upon this principle of law, the plaintiffs assert that, as the defendant did not pay the extension money as required in the deed, the right to cut the timber terminated on 22 January, 1926.

It will be observed that in plaintiff's deed to defendant it was recited that the plaintiff "has received full payment of all extension money to which he is entitled on account of his ownership of a portion of said original tracts up to and including 22 January, 1926. The said deed contained a further clause providing that if the timber should not be cut and removed before 22 January, 1926, then the defendant "shall pay to George W. Mote, his heirs or assigns the sum of $100.00 per annum for each year of said additional period after 22 January, 1926, in advance of or before 22 January of each year of said additional five-year period." The payments provided for in the contract were annual payments. If a payment had been made on 22 January, 1926, such payment under the terms of the contract, would have extended the period of cutting until 22 January, 1927. Plaintiff's deed to the de-

fendant was dated 12 May, 1922, and it would seem clear that, if on 12 May, 1922, the plaintiffs had been paid up to and including 22 January, 1926, the extension money for 1926, had, as a matter of fact, been paid in advance as provided in the second clause of the deed between the parties.

But, however this may be, the plaintiffs are not entitled to recover by reason of the application of the principle of estoppel. The undisputed evidence is that the agent of defendant called upon the plaintiffs prior to 22 January, 1926, in order to ascertain if any extension money was due the plaintiffs. The plaintiffs assured the defendant that they had been paid for the year 1926, and that "nothing was or would be due or owing to them on that account by the White Lake Lumber Co." In addition to this positive statement by the plaintiff, he pointed out to the defendant a place to locate his tramroad, and, with apparent approval, permitted the defendant to build said tramroad over the land, move his machinery and other equipment thereon and to begin cutting and removing timber in the usual way.

The ultimate and final question, therefore, is whether or not such conduct and statements on behalf of plaintiffs create an equitable estoppel.

Bispham on Equity (5 ed.), sec. 282, defines equitable estoppel as follows: "Equitable estoppel, or estoppel by conduct, has its foundation in the necessity of compelling the observance of good faith; because a man cannot be prevented by his conduct from asserting a previous right, unless the assertion would be an act of bad faith towards a person who had subsequently acquired the right. It is the presence of this bad faith, either in the intention of the party or by reason of the result, which would be produced if he were permitted to deny the truth of his statement, that distinguishes this species of estoppel from estoppel at common law." This principle was approved by *Justice Walker* in *Boddie v. Bond,* 154 N. C., 369.

In *Wells v. Crumpler,* 182 N. C., 358, *Justice Walker* reasserts and enlarges the principle as follows: "We cannot imagine a case where the doctrine of equitable estoppel could more justly have been applied than to this one. Where a party who has, or claims, a right, either openly and unequivocally abandons it, or does not assert it when he should do so, and induces another by his silence or conduct to believe that the right does not exist, or that he makes no claim to it, if he has it, and abandons and surrenders it, and the other party, acting upon such conduct as it was intended that he should do, and is induced thereby to do something, by which he will be prejudiced, if the party who so acted is permitted to recall what he has done, equity steps in

and protects the party thus misled to his prejudice, and will forbid the other to speak and assert his former right, when every principle of good faith and fair dealing requires and even demands, that he should be silent." *Mfg. Co. v. Building Co.,* 177 N. C., 104.

In *Cromartie v. Lumber Co.,* 173 N. C., 712, the defendant offered to pay plaintiff the extension money more than once prior to the expiration of the period specified in the contract. The plaintiff said, "he was not going to charge it; that he had been paid for the timber . . . and would not require anything more." The court held "that the plaintiff could still collect extension money, but that he could not, after leading defendant to believe that he would waive the extension money, treat it as a trespasser and sue for the value of the timber cut during the extension period." Whereupon, judgment was entered against the defendant for the extension money due under the contract, from which judgment plaintiff appealed to the Supreme Court. The judgment so rendered was upheld, the Court holding that "while waiver is not in the proper sense of the term a species of estoppel, yet where a party to a transaction induces another to act upon the reasonable belief that he had waived or will waive certain rights, remedies or objections which he is entitled to assert, he will be estopped to insist upon such rights, remedies or objections to the prejudice of one misled."

The facts in the *Cromartie case, supra,* and the principle of law declared therein are decisive of this appeal. The decision in the *Cromartie case* was *per curiam,* but such an opinion carries all the force of a formal utterance. *Hyder v. Henderson County,* 190 N. C., 663.

For the reasons given we hold that the judgment should be
Affirmed.