Action for the recovery of land. Defendant denied the plaintiff's ownership and set up an equitable estoppel, by which he says that, if he had not title to the land in dispute, he acquired it by the conduct of the plaintiff with reference to the location of a line between the said land which is claimed by him and that sold by plaintiff to Mrs. Mamie E. Miles. The defendant contended that the line between the disputed lot and the property sold was curved, extending from the southeast corner of the Presbyterian Church lot (at A on the map) to the northeast corner of the old peach orchard (A, B, C, on the map), and that when plaintiff sold to Mrs. Miles, the husband of the latter, T. J. Miles, acting for his wife, agreed with him that the line of division between the two lots should be straightened, so that the line would extend in a straight course from D to C. The deed from plaintiff to Mrs. Miles was (362) made accordingly. Plaintiff was not present when T. J. Miles and defendant agreed upon the line, but she testified that T. J. Miles told her before she signed the deed, "that he had traded with defendant and agreed on a line between the lots, and that such new line was inserted in the deed," which contains the following clause: "Said northern line beginning at the northeast corner of the orchard and running north 78 1/4 west 308 feet 4 inches to the Presbyterian Church lot, is an agreed line by all parties interested. In the presence of." Plaintiff, in her own behalf, testified: "My aunt, Mrs. Heptinstall, died 12 December, 1909. Miss Person died in February following. I made sale to Mr. Miles about a month after her death. I paid Miss Blow the $1,000 provided in my aunt's will. I had no communication, written or oral, with defendant and did not authorize Mr. Miles to represent me in any transactions with him. When I went to Littleton to attend the sale of personal property of my aunt's estate, I *Page 285 
[EDITORS' NOTE: THE MAP IS ELECTRONICALLY NON-TRANSFERRABLE.], SEE 154 N.C. 285.] *Page 286 
had already bargained with Mr. Miles, but the papers had not been executed. There had been no controversy between defendant and myself respecting the ownership of property, and at the time I executed the deed to Mrs. Miles I had not learned that the property I am now suing for was embraced in the will, and was mine. I understood from Mr. Miles when I signed the deed that at an interview between him and defendant, at which I was not present, he had made a trade with the defendant, letting him have a few feet of land at the rear of the lot I sold him for a given number of feet claimed by the defendant at the front. I was leaving Littleton on the night train and signed the deed that night without reading it, but supposed it was all the same. I did not understand that I was signing away any rights except to the land I was selling Mr. Miles. I did not know that I had any more land than I was selling Mr. Miles. Mr. Miles sent me a bill for surveying the land and I paid it. I have not sold the lot I am now suing for. I was asked by Mr. Miles to go out there that morning. I went and stayed a little while and left for the house where the sale was going on. I did not send for the surveyor. I did not understand that I had anything to do with the running or fixing any line. My trade was (363) made with Mr. Miles before that time. Mr. Miles afterwards sent me the surveyor's bill and I paid it. I had heard in my aunt's lifetime that she had been defrauded out of the lot now in suit. She was easy to influence and would not contend for her rights. Mr. Miles told me before I signed the deed that he had traded with the defendant and agreed on a line between the lots and that such agreed line was inserted in the deed, as now shown to the court."
T. J. Miles, witness for the plaintiff, testified: "I traded with Miss Boddie, plaintiff, by letter before any lines were established. She was in Littleton soon after Mrs. Heptinstall's death at a sale of the personal property of the estate. I think I took the deed from her before she left. I arranged to run line of the lot I was buying. Defendant was in possession, claiming the lot now in dispute, and I told him I was going there next morning to run the line, and wanted him to come, and he did so. Mr. Picot and Mr. Newsom came with the defendant and talked for him. I was acting entirely for myself in the matter and did not represent Miss Boddie. We found that a straight line continuing the Presbyterian Church line would strike the building already spoken of, and as the will called for the buildings with the house lot, we ran a diagonal line from the Presbyterian Church corner so as to strike the fence line north of the house. I agreed with the defendant that I would give him certain allowance of land at another point on the line if he would give me so many feet, 17 feet 4 inches, along the Presbyterian Church lot, running north, so as to make the line a square one *Page 287 
instead of diagonal across the now disputed lot. The plaintig [plaintiff] was present when we were running the line, a little while, and left. I do not think she spoke to the defendant at all. She had nothing to do with my arrangement with the defendant. I was acting entirely on my own account with him without any authority from plaintiff and without her knowledge. I did not undertake to act for her. I had the deed from her to my wife prepared and she executed it." (Defendant here introduced the deed from plaintiff to Mrs. Miles referred to by the witness, and read from description, "N. 78 1/2 W. 308 feet 4 (364) inches to corner of Presbyterian Church lot . . . is an agreed line by all parties interested." Plaintiff objected to the introduction of the deed during the taking of her testimony, and excepted to the admission of it by the court.) "That clause in the deed was inserted by my direction. Defendant and I agreed on line and plaintiff had nothing to do with it. I had already bargained to buy the property I got. Plaintiff had nothing to do with the negotiation and did not authorize me to make any agreed line. She lived in Greensboro, and I don't know that she made any claim to the land now in controversy. She was not present when the survey was made. There was some controversy between plaintiff and Mr. Newsom. Halifax Street was not established until after Mr. Heptinstall's death. There was a path or driveway along there across his field in his lifetime." There was evidence that John W. Heptinstall at one time owned all the land and devised it by his will to his widow, Cornelia B. Heptinstall, who devised it to Mrs. Person for life, with remainder to the plaintiff. The life tenant died in February, 1910, and plaintiff shortly thereafter contracted to sell that part of the land designed on the map as the "Heptinstall lot" to Mrs. Miles, and the deed to her was executed on 24 March, 1910.
At the close of the testimony introduced by the plaintiff, the defendant not having offered any except the deed, the court ruled, "that the plaintiff was estopped to maintain her action by the recital in her deed to Mrs. Miles, to wit, `that N. 78 1/4 W. 308 feet 4 inches to corner of Presbyterian Church lot is an agreed line by all parties interested. In the presence of,' and entered judgment of nonsuit." The plaintiff excepted and appealed.
There is no sufficient evidence in the case to show that the defendant owned any part of the land, and unless the alleged equitable estoppel can be established, the *Page 288 
(365) plaintiff is entitled to recover the premises in dispute, provided the jury find that John W. Heptinstall was seized of them at the time of his death, as by his will and that of his widow and devisee they have been vested in the plaintiff. There was evidence tending to prove that he was the owner, which it is not necessary to set out. The material facts will be found in our statement of the case.
The doctrine of equitable estoppel has been thoroughly discussed and settled by the courts. What seems to be the best thought upon the subject may be thus expressed. Estoppel by misrepresentation, or equitable estoppel (which is estoppel in pais), grows out of such conduct of a party as absolutely precludes him, both at law and in equity, from asserting rights which might perhaps have otherwise existed, either of property, of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right either by contract or of remedy. This estoppel arises when any one, by his acts, representations, or admissions, or by his silence when he ought to speak out, intentionally or through culpable negligence induces another to believe certain facts to exist, and such other rightfully relies and acts on such belief, so that he will be prejudiced if the former is permitted to deny the existence of such facts. It consists in holding for truth a representation acted upon, when the person who made it, or his privies, seek to deny its truth and to deprive the party who has acted upon it of the benefit obtained. 16 Cyc., 722. It is called equitable estoppel because it arises upon facts which render its application in the protection of rights both equitable and just, but the doctrine is recognized in the courts of common law, although at first administered as a branch of equity jurisprudence. Coke refers to it in his commentaries. "Touching estoppels, which is an excellent and curious kind of learning, it is to be observed that there be three kinds of estoppels, viz.: by matter of record, by matter in writing, and by matter in pais." Coke Litt. 352a. In order to constitute an equitable estoppel, there must exist a false representation or concealment of material fact, with a knowledge, actual or constructive, of the truth; (366) the other party must have been without such knowledge, or, having the means of knowledge of the real facts, must not have been culpably negligent in informing himself; it must have been intended or expected that the representation or concealment should be acted upon, and the party asserting the estoppel must have reasonably relied on it or acted upon it to his prejudice. 16 Cyc., 722; Eaton's Equity, p. 169. It is a species of fraud which forms the basis of the doctrine, and to prevent its consummation is its object. What I knowingly induce my neighbor to regard as true is the truth as between us, if he has been *Page 289 
misled to his injury by my asseveration or conduct. Kirk v. Hamilton,102 U.S. 68; Light Co. v. Gas Co., 99 Tenn. 371. Mr. Eaton, in his valuable treatise on Equity, at p. 169, states the constituent elements of a good equitable estoppel with fullness and accuracy, as follows:
"1. Words or conduct by the party against whom the estoppel is alleged, amounting to a misrepresentation or concealment of material facts.
"2. The party against whom the estoppel is alleged must have knowledge, either actual or implied, at the time the representations were made, that they were untrue.
"3. The truth respecting the representations so made must be unknown to the party claiming the benefit of the estoppel at the time they were made and at the time they were acted on by him.
"4. The party estopped must intend or expect that his conduct or representations will be acted on by the party asserting the estoppel, or by the public generally.
"5. The representations or conduct must have been relied and acted on by the party claiming the benefit of the estoppel.
"6. The party claiming the benefit of the estoppel must have so acted, because of such representations or conduct, that he would be prejudiced if the first party be permitted to deny the truth thereof." To the same effect are Bigelow on Estoppel (5 Ed.), p. 26; Minor and Wurts on Real Property, sec. 1067, and note 13.
But how is this principle of law, which was intended to promote justice and fair dealing, applicable to the facts of this (367) case? We do not see. The plaintiff says that she did not know of her title to the land in controversy at the time of the transaction between Miles and the defendant. She was not present and was ignorant of their arrangement as to the line until told of it by Miles, when she executed the deed to his wife. The defendant has not lost anything, nor has he been prejudiced in any degree by anything she said or did. He had nothing to lose, so far as the testimony shows. The land was not his, but hers, and how he can claim that he has been wronged by losing any land which he did not have to lose, we are at a loss to understand. How has he been damaged? His situation has not been changed for the worse. The parties were not even attempting to locate or settle the true position of a line which was in doubt, but to change a known and crooked line by substituting a straight one for it, which could not be done by parol. Davidson v. Arledge, 88 N.C. 326 (S. c., 97 N.C. 172);Reed v. Schenck, 13 N.C. 415. The case does not fall within the rule as to lines run and marked for the purpose of fixing the boundaries to be inserted in a deed — the contemporaneous location of a line — for the case was not tried upon any such theory, but solely upon the idea of *Page 290 
an equitable estoppel, and, besides the defendant has shown no title to the locus in quo, unless the plaintiff has in some way been estopped to deny it. It was not a question of settling a boundary, but one of estoppel. The line was only established for the purpose of defining the boundaries of the land which the plaintiff had contracted to convey to Mrs. Miles. To estop the plaintiff by her conduct from asserting her legal rights to her property, there must have been intentional deception, or such gross or culpable negligence as to amount to constructive fraud.Brant v. Virginia Coal Co., 93 U.S. 326; Henshaw v. Bissell, 18 Wall., 255. T. J. Miles was not acting for the plaintiff, but for himself. He had no authority to act for her and she had nothing to do with the arrangement between him and the defendant. He so testifies; and as plaintiff was nonsuited, this evidence must be considered as true. In what way, therefore, has she been guilty of any fraudulent conduct? The line had been agreed upon and the transaction between (368) Miles and defendant closed before she was ever informed of the fact. If defendant had, in a legal sense, been misled to his injury, it was done before she knew of it, and what she said or did afterwards had no influence upon him. It is perfectly apparent that she did not intend to deceive the defendant, for she was utterly ignorant of her true title to the locus in quo, and could not, therefore, have misrepresented anything to him in respect thereto. She knew nothing about the line, whether it was at one place or another, and was not particular as to its location. She merely supposed that the line had been fixed as the northern boundary of the land she was to convey to Mrs. Miles, and without reference to any disputed boundary between the tract so to be conveyed and land claimed, but, as it turns out, not owned by the defendant. She could not have intended to mislead him and thereby cause him to change his position or to act prejudicially to himself upon what she said or did, because she was not aware of any facts or circumstances which would induce her to believe that such a result would follow any conduct of hers. She was innocent of any wrongdoing and did nothing which bears any resemblance, in the slightest degree, to an estoppel, nor has the defendant been misled to his damage by any words or conduct of the plaintiff. Estis v. Jackson, 111 N.C. 145; Lovelacev. Carpenter, 115 N.C. 424. There must not only be fraud, or such culpable negligence as amounts to it in law, or a positive misrepresentation, but it must have been acted upon to the damage of the other party. "It is not enough that the representation has been barely acted upon; if still no substantial prejudice would result by admitting the party who made it to contradict it, he will not be estopped." Bigelow on Estoppel (5 Ed.), p. 644. "There can be no estoppel in equity, or in any principles of equity, unless the person who asks relief from *Page 291 
the rigor of the law is a purchaser in the large and liberal sense in which the term includes all who have given value or changed their position for the worse in reliance on the act or declaration of others." Herman on Estoppel, sec. 797. "If a man, whatever his real meaning may be, so conducts himself that a reasonable man would take his conduct to mean a certain representation of facts and that it (369) was a true representation, and the latter was induced to act upon it, in a particular way, and he with such belief does act in that way to his damage, the first is estopped from denying that the facts were as represented." Ibid., sec. 759; Rainey v. Hines, 120 N.C. 376. It is said in Bispham on Equity (5 Ed.), sec. 282: "Equitable estoppel, or estoppel by conduct, has its foundation in the necessity of compelling the observance of good faith; because a man cannot be prevented by his conduct from asserting a previous right, unless the assertion would be an act of bad faith towards a person who had subsequently acquired the right. It is the presence of this bad faith, either in the intention of the party or by reason of the result which would be produced if he were permitted to deny the truth of his statement, that distinguishes this species of estoppel from estoppel at common law." It is further said that the assertion of an untruth may operate to estop a party from subsequently setting up the truth, and it is not necessary that the assertion should be willful. If innocently or mistakenly made, and yet the other party relied on it and acted upon it in a way to prejudice him if the truth is now permitted to be asserted, the party making the statement will be estopped by it. Sections 283 to 292. We are not dealing now with any such supposed case, and it is not necessary to discuss it. The plaintiff made no assertion or statement of fact which has misled the defendant. She has simply conveyed a part of her land to Mrs. Miles and fixed the northern line or boundary as set out in her deed, without having any transaction or communication with the defendant. It is, therefore, nothing but just that she be allowed to stand upon her right and assert her real title to the disputed land. The reference in the deed to the "northern line" as having been agreed upon by the interested parties must be restricted in its operation to her and Mrs. Miles — the only parties to the deed — and its effect, as to the defendant, is not extended beyond that produced by the other description in the deed. It works no estoppel and can not be treated as a ratification. There is no room in this case for the contention that it amounts to either of these, so as to give the defendant any right to the land which he did not (370) have before. If there is any estoppel, as between Mrs. Miles and the defendant, it could extend only to the small strips of land, one of which fell on his side of the line in straightening it, and for which he says that he gave up, in exchange, the other small part of her side of the *Page 292 
line. But we have seen that the land alleged to have been thus exchanged did not belong to the defendant, as far as the case shows, and no conduct of Mrs. Miles, or her agent, could have the effect of impairing the plaintiff's right to her land. The court erred in holding that the plaintiff was estopped by any representation or conduct of hers.
The judge permitted the defendant to introduce the deed to Mrs. Miles during the taking of plaintiff's testimony and then entered a nonsuit upon it. This was irregular and should not have been allowed. The defendant's testimony could not be thus considered against the plaintiff in passing upon a motion to nonsuit. He is not entitled to judgment of nonsuit based upon testimony introduced by himself. Brittain v. Westhall, 135 N.C. 492;Cotton v. R. R., 149 N.C. 227; Morton v. Lumber Co., 152 N.C. 54.
The nonsuit will be set aside and a new trial granted.
Error.
Cited: Patillo v. Lytle, 158 N.C. 95; Boddie v. Bond, ib., 204; Caudlev. Caudle, 159 N.C. 55; Ball-Thrash v. McCormick, 162 N.C. 473;Campbell v. Miller, 165 N.C. 54; LeRoy v. Steamboat Co., ib., 116;Daughtridge v. R. R., ib., 199; Hodges v. Wilson, ib., 327; Patterson v.Franklin, 168 N.C. 78; Lloyd v. R. R., ib., 649; Hardware Co. v. Lewis,173 N.C. 295.