RUBIE L. SMITH, SURVIVING WIDOW OF ALMON F. SMITH, PETITIONER v. FREDERICK D. SMITH AND E. V. WILKINS, TRUSTEE, RESPONDENTS.

(Filed 23 July, 1965.)

1. **Wills § 60—**
    Litigation which "affects the share of the surviving spouse" within the purview of G.S. 29-30(c)(4) extending the time for the surviving spouse to make an election to take a life estate in one-third of intestate's lands, is litigation which substantially and materially affects the choice, and is not limited to litigation which directly affects the title to that part of the estate belonging to the surviving spouse under the Intestate Succession Act.

2. **Same—**
    Intestate died leaving a widow and one child by a former marriage. The widow's stepson deeded his one-half interest in the estate to her and, prior

SMITH *v.* SMITH.

to the expiration of the time for the widow to make an election under G.S. 29-30(c)(3), instituted suit to set aside his deed for fraud. *Held:* The suit to set aside the deed was litigation affecting the widow's share of the estate within the purview of G.S. 29-30(c)(4), since until the termination of such suit the widow could not judge whether it would be to her advantage to make the election.

**3. Same—**

Intestate died leaving a widow and one child by a former marriage who executed a deed of trust on his one-half interest in the lands of the estate and then conveyed to the widow the same realty in fee. *Held:* The widow's suit to enjoin foreclosure of the deed of trust on the grounds that she individually was the sole owner of the land and that the land was subject to sale to make assets to pay debts of the estate is litigation affecting the widow's share in the estate within the purview of G.S. 29-30(c)(4), and such suit remained pending until dismissed, notwithstanding that prior to dismissal final judgment was rendered in another action setting aside the deed to the widow for fraud.

**4. Actions § 12—**

An action properly instituted remains pending until there is a judgment making a final disposition of it.

**5. Wills § 60—**

If the surviving widow, while litigation affecting her share of the estate is pending, files a sufficient written request with the clerk for an order fixing a time under which she may make an election under G.S. 29-30(c)(4), such proceeding is instituted within the time limited, and delay of the clerk in entering the order fixing the time within which such election might be filed may not be imputed to the widow.

**6. Estoppel § 4—**

Equitable estoppel is to be applied as a means of preventing injustice and must be based on the conduct of the party to be estopped which the other party relies upon and is led thereby to change his position to his disadvantage.

**7. Judgments § 30—**

The sole child of intestate was successful in obtaining judgment setting aside his deed to the widow for his intestate share. *Held:* The right of the widow to elect to take a life estate in the homeplace instead of the fee in one-half of the lands of the estate was not in issue in the action to set aside the deed, and the judgment therein does not constitute an estoppel.

**8. Registration § 5—**

Deed of the son of intestate to his step-mother for his interest in the lands of the estate was set aside for fraud. On the day judgment was rendered setting aside his deed, he executed deed of trust to his attorneys. *Held:* The attorneys, having knowledge of the respective rights of the parties, may not claim as innocent purchasers for value so as to preclude the widow from thereafter electing to take a life estate in the homeplace under G.S. 29-30(c).

**9. Estoppel § 1—**

The widow entitled to one-half interest in the lands of the estate accepted deed to the other one-half interest from intestate's sole child. The deed was thereafter set aside for fraud. *Held:* The acceptance of the deed does not estop the widow from thereafter electing to take a life estate in the homeplace in lieu of her one-half interest, since her right to make the election is founded on statute and is *aliunde* the deed.

**10. Estoppel § 3—    Widow's claim of title under void deed from heir held not to estop her from electing to take a life estate in homeplace.**

The widow of intestate procured deed from intestate's son for his one-half interest in the lands of the estate and asserted sole ownership of the lands in the son's action to set aside his deed for fraud and in her action to enjoin foreclosure of a deed of trust executed by him to a third person. Final judgment was rendered setting aside the deed for fraud. *Held:* The widow is not estopped from asserting her right to elect, under G.S. 29-30, to take a life estate in the homeplace, since she failed to maintain her position in the prior actions, since her prior assertion of sole ownership, while different, is not necessarily inconsistent with an election, since the questions involved are not the same, and since the son and the parties claiming under his deed of trust did not alter their positions and thus render it unjust for her to assert her right of election.

**11. Dower § 1;    Curtesy—**

Dower and curtesy have been abolished, but G.S. 29-30 preserves to a surviving spouse the benefits of dower and curtesy.

**12. Wills § 60—**

The right of the surviving spouse to take a life estate under G.S. 29-30 may be precluded by equitable estoppel only if all of the elements of estoppel *in pais* are present.

**13. Same—**

The fact that a widow accepts from testator's sole child a deed to his one-half interest in the lands of the estate does not constitute an election to take under G.S. 29-14 and does not preclude her upon the later rendition of judgment setting aside the deed to her for fraud from electing under G.S. 29-30 to take a life estate in the homeplace.

**14. Estoppel § 4—**

The fact that the widow procures by fraud the execution of a deed from intestate's son for his one-half interest in the lands of the estate does not estop her, after the rendition of judgment setting aside the deed, from asserting her election under G.S. 29-30 to take a life estate in the homeplace, since the position of the parties with respect to the title to the lands was not altered by reason of the fraud, and since it would be unjust to deprive the widow of her right to contest the action for fraud unless she gave up her rights under G.S. 29-30 in the event that action was terminated against her.

SHARP, J., dissenting.

BOBBITT. J., joins in dissent.

APPEAL by respondents from *Hobgood, J.,* November 1964 Session of JOHNSTON.

*Lyon & Lyon for Petitioner.*
*L. Austin Stevens and Wiley Narron for Respondents.*

MOORE, J.  This is a special proceeding, instituted pursuant to G.S. 29-30 whereby petitioner elects to take life interest, in lieu of her share in fee, in the homeplace of which her husband died seized.

Almon F. Smith died intestate on 11 December 1961, survived by his widow Rubie L. Smith, petitioner herein, and a son Frederick D. Smith, one of the respondents herein. Frederick is the child of deceased by a former wife and is stepson of Rubie. Rubie qualified as administratrix of Almon's estate on 22 December 1961.

On 19 January 1962 Frederick executed and delivered to Wiley Narron, Trustee, a deed of trust conveying his one-half undivided interest in the lands of which his father died seized, to secure the payment of a note of even date payable to L. Austin Stevens on 1 January 1963.

On 28 April 1962 Frederick executed and delivered to Rubie a warranty deed conveying the same realty to her in fee simple. Included in this conveyance was his one-half undivided interest in the homeplace where Rubie resided with Almon until the time of his death, and where she has resided at all times since. On 9 May 1962 Frederick instituted an action to set aside the deed for fraud in its procurement, alleging he signed the deed while intoxicated thinking it was a note for money advanced, the consideration was inadequate, and Rubie had taken advantage of her fiduciary relationship as administratrix. There was a verdict in favor of Frederick and judgment was entered on 4 April 1963 declaring the deed void. Rubie appealed to Supreme Court.

In the meantime, early in February 1963, Narron, Trustee, because of default of Frederick, undertook to foreclose the deed of trust and advertised the property for sale — sale date 4 March 1963. On the date of the sale, Rubie, individually and as administratrix, filed a suit to enjoin the foreclosure, alleging that she, individually, was the sole owner of the property and it was subject to sale to make assets to pay the debts of her late husband and Frederick had warranted against encumbrances. This sale was conducted, but on 8 March 1963 a temporary restraining order was issued enjoining consummation of the sale. On 19 March 1963 the restraining order was continued to the final hearing.

SMITH *v.* SMITH.

The Supreme Court affirmed the judgment of the superior court in the fraud case, and the opinion *(Smith v. Smith,* 261 N.C. 278, 134 S.E. 2d 331) was certified to the clerk of superior court on 7 February 1964.

On 4 May 1964 Rubie filed with the clerk of superior court an *ex parte* petition and notice of election to take life interest in the home-place, in lieu of one-half interest in all of the lands of her late husband in fee. She requested the clerk to make an order permitting the election to be filed in accordance with G.S. 29-30. The clerk declined to enter any order until Frederick and other interested persons were made parties, served with summons and had opportunity to answer.

On 27 June 1964 a judgment was entered in the suit to enjoin the foreclosure of the deed of trust, dismissing same on the ground that the opinion in *Smith v. Smith, supra,* rendered the action moot.

On 6 August 1964, by consent of interested parties, the clerk entered an order in the election proceeding, permitting Rubie to file her notice of election as provided by G.S. 29-30 and have summons issued for interested parties, without prejudice to interested parties in their right to contest the election. Summons was issued 20 August 1964 and the same, together with petition and notice of election, was served on respondents herein, Frederick D. Smith and E. V. Wilkins, Trustee. Respondents filed separate answers contesting petitioner's right to make an election and alleging that petitioner was guilty of laches, had previously made an election to take under the provisions of G.S. 29-14 one-half of the real estate in fee, and was estopped by her fraud in the procurement of the deed from Frederick which had been set aside. Wilkins, named trustee in a second deed of trust from Frederick D. Smith dated 4 April 1963, also defended on the further ground that the holders of the note secured by the deed of trust "are innocent purchasers for value without any notice of defects." The proceeding was transferred to the civil issues docket for the judge to pass on the pleas in bar.

The matter was heard by Hobgood, J., and judgment was filed on 18 November 1964. The judgment finds as a fact that at the time the petition and notice of election were filed on 4 May 1964 there were actions pending in the superior court of Johnston County which "did involve the share and interest of the said Rubie L. Smith . . . in said lands," and that the "request and petition for the written order was made within apt and reasonable time within the meaning of the statute." The pleas in bar were overruled. It was decreed that petitioner "is hereby permitted and allowed to file her notice of election to take a life estate . . . as of May 4, 1964," and that the proceedings are remanded to the clerk for an order carrying out this judg-

ment "and for orders allotting the life estate of the surviving spouse as provided by G.S. 29-30." Respondents appeal from this judgment.

If an intestate is survived by only one child, the share of the surviving spouse shall be one-half of the net estate, including a one-half interest in the real property. G.S. 29-14. The surviving spouse may elect and is entitled to take, in lieu of the share provided in G.S. 29-14, a life estate in one-third in value of all of the real estate of which the deceased spouse died seized. The life estate shall, at the election of the surviving spouse, include a life estate in the usual dwelling house occupied by the surviving spouse at the time of the death of the deceased spouse, together with the outbuildings, improvements and easements thereunto belonging and appertaining, and lands upon which they are situated and reasonably necessary for the use and enjoyment thereof — this, regardless of the value and despite the fact that the life estate might exceed the said one-third value limitation. G.S. 29-30 (a), (b). Such election shall be made within one month after the expiration of the time limited for filing claims against the estate, if letters of administration are issued within twelve months after the date of the deceased spouse. G.S. 29-30 (c) (3). But, if litigation that affects the share of the surviving spouse in the estate is pending, then within such reasonable time as may be allowed by written order of the clerk of the superior court. G.S. 29-30(c) (4).

Rubie qualified as administratrix on 22 December 1961. Claims against the estate were required to be filed within six months after the publication of the first notice to creditors. G.S. 28-113. Rubie had one month after the expiration of said six-months period within which to elect to take a life estate in lieu of a share in fee, G.S. 29-30(c) (3), unless litigation affecting her share in the estate was pending, G.S. 29-30(c) (4). If no such litigation was pending, she was required to make her election on or before 22 July 1962 or a date shortly thereafter, depending on the date of the first publication of notice to creditors. She first filed her notice of election and request for an order permitting filing of same on 4 May 1964. At the expiration of the time limited in G.S. 29-30(c) (3) the action, instituted by Frederick to set aside the deed he had made to her, was pending; this action was instituted 9 May 1962 and was terminated 7 February 1964. Her first notice of election was filed 87 days after termination of that action. At the time of filing said first notice of election, Rubie's suit to restrain foreclosure of deed of trust by Narron, Trustee, was pending; it had been instituted 4 March 1963 and was terminated 29 June 1964.

The first question for decision is whether the action to set aside the deed for fraud and the suit to restrain the foreclosure of the deed of trust were litigation *affecting the share* of the surviving spouse. Re-

spondents say they were not. They point to G.S. 29-2(6) which defines "share" and states: " 'Share', when used to describe the share of a net estate or property which any person is entitled to take, includes . . . the undivided fractional interest in the real property, which the person is entitled to take." They insist, therefore, that Rubie's share was a one-half interest in the real estate in fee, and that the litigation did not affect her share as thus defined, but affected only the one-half interest of Frederick, his share. It is true that the *subject* of both actions was Frederick's one-half interest.

We do not agree that the expression, "litigation that affects the share of the surviving spouse in the estate" is to be so narrowly limited and applied. The definition contained in G.S. 29-2(6) is intended to apply when "share" is used "to describe the share *of a net estate or property*," *i.e.*, a share under G.S. 29-14, which "includes . . . the undivided fractional interest in the real property." As used in G.S. 29-30(c)(4), "share" means such share in the estate (not necessarily the net estate or property) as the surviving spouse shall be entitled to take by any provision of the act. The very reason for granting the surviving spouse an election or choice is to prevent such spouse from being rendered penniless and turned out of doors by reason of a small net estate or an insolvent estate. The life estate, which the surviving spouse elects, is not subject to the payment of the ordinary debts due from the estate of the deceased spouse. G.S. 29-30(g). Certainly a surviving spouse would elect to take a life estate where it would require a sale of all of the property of deceased's estate to pay the debts. The reason different time limits are fixed for making the election, under the different circumstances, as set out in G.S. 29-30(c)(1), (2), (3) and (4), is to give the surviving spouse ample opportunity to make a decision as to which choice is most beneficial. And the subject of litigation would rarely be the deciding factor in making the choice. For example, if there is a disputed claim which, if allowed, would render the estate insolvent or nearly so, and which, if disallowed, would leave a large net estate, the outcome of the suit on the claim would *affect* the share of the surviving spouse and might well determine the matter of election, though the subject of the litigation is a mere debt and not the title to land. Any litigation which may substantially and materially *affect* the choice the surviving spouse is entitled to make "affects the share of the surviving spouse in the estate."

It is a fair inference that Rubie did not wish to accept one-half interest in a house and be subjected to possible annoyance, interference and unreasonable demands of a cotenant, and run the risk of a sale for partition — particularly in view of the fact that it had been and was her home. The alternative was to take a life estate in the whole

of the homeplace. Before the time limited for making an election had expired, she acquired by deed the outstanding one-half interest of her cotenant. It seemed that there was no longer any need for electing to take a life estate. Before the time limit for making an election, as provided in G.S. 29-30(c)(3), had expired, Frederick instituted litigation to set aside the deed to the interest he had conveyed, on the ground that she had defrauded him. Should Rubie prevail there would be no reason for an election; should Frederick prevail she would be relegated to the position she occupied before the deed was passed. The outcome of the litigation would *affect* her choice or election, *i.e.*, her share of the estate. The pendency of the litigation extended her time for making the election.

Before execution of the deed to Rubie, Frederick had executed and delivered to Narron, Trustee, a deed of trust conveying as security his interest in all of the lands of the estate, including his interest in the homeplace. While the fraud action was still pending, Narron, Trustee, undertook to foreclose the deed of trust under the power of sale therein. Rubie was confronted with these possibilities: A sale under foreclosure of a one-half interest in the homeplace, if she was not the successful bidder, would place her in the same position she occupied before she acquired the deed from Frederick; to permit the property to be sold without objection might amount to a waiver of her right of election in the event she did not prevail in the fraud suit (19 Am. Jur., Estoppel, § 91, pp. 747-749); and her deed from Frederick contained a warranty against encumbrances and a sale might cut off possibility of recovery on the warranty. She instituted a suit to enjoin the sale, asserted her ownership of the property, pointed out her right as administratrix of the estate to resort to the property as an asset of the estate for payment of debts, and tendered payment of the indebtedness secured by the deed of trust upon condition the debt and security be assigned to her to protect her rights under the warranty. Narron, Trustee, and his codefendant, answering, declined the tender and refused to assign the indebtedness and deed of trust. Whether the sale was consummated and, if so, whether she was the successful bidder at the sale, would affect her decision in the matter of making an election under G.S. 29-30, and therefore would affect her ultimate share in the estate. It is suggested that the decision in *Smith v. Smith*, 261 N.C. 278, was to all intents and purposes decisive of the issues in the foreclosure suit. Conceding the point, without decision thereon, the fact remains that there was no final judgment in the foreclosure suit until 27 June 1964. It was pending on 4 May 1964 when petitioner filed her notice of election and request for a written order by the clerk. "Pendency" is "the

state of an action . . . after it has been begun, and before the final disposition of it." Black's Law Dictionary (4th Ed.).

The second question presented by the appeal is: Was this proceeding commenced within apt and reasonable time within the meaning of G.S. 29-30(c)(4)?

The court below adjudged that the proceeding is deemed to have been commenced on 4 May 1964 when petitioner filed *ex parte* her notice of election and requested the clerk to make a proper written order. If this ruling is correct, the proceeding was commenced while litigation affecting the share of petitioner was pending, and no question of laches or of "apt and reasonable time" is involved.

G.S. 29-30(c)(4) provides that if litigation is pending, which affects the share of the surviving spouse, the surviving spouse shall make the election "within such reasonable time as may be allowed by written order of the clerk of the superior court." The statute contemplates that the outcome of such litigation may well determine whether the surviving spouse will elect to take a life estate. Therefore it authorizes the surviving spouse, if such litigation is pending, to request of the clerk a written order allowing a reasonable time within which the notice of election and the proceedings pursuant thereto may be filed and instituted. Upon such request, it becomes the duty of the clerk forthwith to make a written order fixing a time within which an election may be filed in accordance with the last paragraph (and subsections thereof) of G.S. 29-30(c). The time allowed should be such time after the termination of the pending litigation as to the clerk, in the exercise of his sound discretion, seems reasonable under the circumstances. The written order is only ministerial, it merely fixes the time limit, it is not an adjudication of any issues or questions of law which may be raised in the proceeding between the surviving spouse and other interested parties. The order fixing the time limit must be made forthwith upon the *ex parte* request of the surviving spouse. The rights of the parties are determined after notice of election has been filed pursuant to the order fixing the time limit, summons served and the pleadings are in. The proceedings determining the rights of the parties and allotting the life estate are in accordance with the rules of procedure relating to partition of lands as far as practicable. G.S. 29-30(f).

The first petition, filed on 4 May 1964, though inartfully drawn, was sufficient to require the clerk to make the written order fixing time limit. The clerk did not enter such order until 8 August 1964. The most likely explanation of the delay is that the procedure is new and the clerk did not fully understand the nature and extent of his duty. In any event the delay may not be imputed to petitioner. The written order was made in compliance with petitioner's written request which

was filed in apt time. The clerk's order provided that the petitioner "shall have twenty days from this date (8 August 1964) within which to issue summons in her Notice of Election with this Court in the form of a special proceeding, as set forth in G.S. 29-30." Petitioner complied with the order by filing notice of election and issuing summons on 20 August 1964. Summons was served 25 August 1964. All of the steps taken were essential and each was a component of one general proceeding — the proceeding was instituted on 4 May 1964, when the petition and request for a written order was filed, and it was filed in apt time. Certainly the twenty days allowed by the clerk for filing notice of election and issuing of summons was not unreasonable. The objection that the proceeding was not commenced in "apt and reasonable time" is overruled.

The final question presented is whether petitioner is estopped by her conduct and other circumstances to make an election. Appellants contend that petitioner is estopped by judgment, deed, prior inconsistent election, prior inconsistent position, and fraud.

". . . estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth, either by acts of judicial or legislative officers or by his own deed or representations, either express or implied." 19 Am. Jur., Estoppel, § 2, p. 601. ". . . equitable estoppel (which is estoppel *in pais)*, grows out of such conduct of a party as absolutely precludes him, both at law and in equity, from asserting rights which might have otherwise existed, either of property of contract, or of remedy, as against another person who in good faith relied upon such conduct, and has been led thereby to change his position for the worse, and who on his part acquires some corresponding right, either of contract or of remedy." *Boddie v. Bond,* 154 N.C. 359, 70 S.E. 824. ". . . estoppels should be resorted to solely as a means of preventing injustice and should not be permitted to defeat the administration of the law or to extend beyond the requirements of the transactions in which they originate. . . . the doctrine of estoppel when misapplied may be a most effective weapon for the accomplishment of injustice." 19 Am. Jur., § 4, p. 602. The conduct of the party claiming an estoppel must be considered no less than the conduct of the party sought to be estopped. *Peek v. Trust Co.,* 242 N.C. 1, 86 S.E. 2d 745.

Appellants say, "We have litigated title to this property in the case of *Smith v. Smith,* 261 N.C. 278, and the matters therein adjudicated concerning title, we submit is *res judicata* between the parties." The case referred to is the action instituted by Frederick to set aside his deed to Rubie on the ground of fraud. Before the execution of the deed Frederick owned a one-half undivided interest in the homeplace in fee

subject to the right of Rubie to elect to take a life estate therein and relinquish to him the remainder in fee of her undivided one-half interest after the life estate. The action resulted in a judgment in his favor cancelling the deed. This relegated the parties to the position occupied by them prior to the execution of the deed. This was all he asked for in the case and was all the court could grant him. Rubie's right of election was not involved and could not have been — her right of election could only be determined under the proceeding outlined in G.S. 29-30. The applicable rule is succinctly stated in *Gillam v. Edmonson,* 154 N.C. 127, 69 S.E. 924, thus: "The doctrine is that an estoppel of record will bind parties and privies as to matters in issue between them, but it does not conclude as to matters not involved in the issue, nor when they are claimed in a different right." Wilkins, Trustee, is in no better position on this point than Frederick. He alleges that the owners of the note secured by the deed of trust are *bona fide* purchasers without notice. The facts are otherwise. It is admitted in appellants' brief that the holders of the note are the attorneys who have represented Frederick in all of the litigation between him and Rubie, including the instant case. The deed of trust was executed the very day the superior court rendered judgment in favor of Frederick in the fraud case, and while the case was pending in Supreme Court. Certainly there are no persons who were in a better position to know and understand the respective relations and rights of the parties and the effect of a judgment in favor of Frederick than these attorneys. See *High v. Pearce,* 220 N.C. 266, 17 S.E. 2d 108; *Boddie v. Bond, supra.*

Appellants further contend that "the petitioner claimed the full fee in the property under the fraudulent deed, and . . . that she is now estopped to deny that Frederick D. Smith owns the one-half interest he purportedly conveyed to her." They contend that Rubie's claim of title, in the fraud and foreclosure suits, under the deed from Frederick, though the deed was later judicially declared to be void, now estops her in this proceeding to elect to take a life estate. They cite in support of this proposition, *Fisher v. Toxoway Co.,* 165 N.C. 663, 81 S.E. 925; *Monds v. Lumber Co.,* 131 N.C. 20, 42 S.E. 334. These cases do not stand for the proposition asserted; they hold that the grantee in a deed or other instrument, who claims title *solely* by reason of the deed or instrument, is estopped to deny the title of the grantor in an action between grantee and grantor, or his assigns, involving the title, though the deed or instrument be void. "While no one can impugn the title under which he holds, as a general rule, an estoppel by deed runs against the grantor rather than the grantee, the exceptions to such rule being limited in scope. Thus, it is generally held that, by accepting a deed, a grantee is not estopped to deny the grantor's title or seizin, ex-

cept when the grantee relies on grantor's conveyance to establish his own claim." 31 C.J.S., Estoppel, § 15, pp. 302, 303. A person cannot claim under a title and deny it at the same time. Petitioner is not now claiming title under the deed from Frederick. She is claiming a life estate by virtue of a right given her by statute; her right came into existence the very moment of her husband's death, and the rights of Frederick and those claiming under him were and are subject to this right of petitioner. She is not estopped by deed.

In both the fraud case and foreclosure case, petitioner in her pleadings asserted sole ownership of the homeplace in fee. Appellants say that this now estops her from claiming a life estate therein. They say that she may not change her position and make a claim contrary to that asserted in the earlier actions. ". . . the following have been enumerated as essentials to the establishment of an estoppel under the rule that a position taken in an earlier action estops the one taking such position from assuming an inconsistent position in a later action: (1) The inconsistent position first asserted must have been successfully sustained; (2) a judgment must have been rendered; (3) the positions must be clearly inconsistent; (4) the parties and questions must be the same; (5) the party claiming estoppel must have been misled and have changed his position; (6) it must appear unjust to one party to permit the other to change." 19 Am. Jur., Estoppel, § 73, pp. 709, 710. Only one of these essentials is clearly present in the instant case — rendition of judgment. Petitioner did not sustain her position in the earlier cases; the positions taken by her are different but not necessarily inconsistent; the questions involved are not the same; respondents have not been misled and have not changed their positions; it is not unjust for petitioner to claim what the statute gives her, especially when she now claims only an estate for life and renounces all rights to any of the property in fee, ceding the remainder interest in fee to Frederick and his assigns in all of the property. In *High v. Pearce, supra,* a widow defended an ejectment suit, instituted by the purchaser at a foreclosure sale, on the ground that her dower had been allotted in the homeplace. It was held that she was not, after an unfavorable judgment in the ejectment suit, estopped to move to set aside the allotment of dower (which was in law void), and to have her dower properly allotted. In *Etheridge v. Davis,* 111 N.C. 293, 16 S.E. 232, defendant denied that he owned certain logs, but the verdict established his ownership. It was held that he was not estopped by his pleading, denying ownership, to claim his personal property exemption in the logs when plaintiff sought to take them under execution. See also *Boddie v. Bond, supra.* Petitioner is not estopped by her pleadings in

the fraud and foreclosure cases to elect to take a life estate in the instant proceeding.

Respondents further contend that, by accepting the deed from Frederick and asserting title in fee in the fraud and foreclosure cases, petitioner made an election to take in accordance with G.S. 29-14 and is estopped to revoke the election and take pursuant to G.S. 29-30. Dower, as such, has been abolished in North Carolina, but G.S. 29-30 preserves to a surviving spouse the benefits of the former rights of dower and curtesy. "There is no doubt that a widow may estop herself from asserting her right of dower by acts *in pais*. On the question whether such an estoppel exists, the rule is that if the claimant by her actions or statements led others to believe that she did not claim dower and to act on that belief, so that the subsequent allowance of dower would operate as a virtual fraud upon them, she will be barred. . . . The rule is equally well settled, however, that in order to bring about this result of equitable estoppel all of the elements of estoppel must be proved." 17A Am. Jur., Dower, § 109, p. 378; *Waggoner v. Waggoner*, 246 N.C. 210, 97 S.E. 2d 887. Upon the death of the intestate, title to his lands immediately vested in Rubie and Frederick under G.S. 29-14, each taking a one-half undivided interest in fee. There is never a gap or *hiatus* in title to land; title always vests in someone. Title to one-half vested in Rubie by operation of law, and not by any election on her part. By statute, G.S. 29-30, she was entitled to take a life estate in lieu of the one-half interest by taking positive action within the time limited by the statute. She has in apt time elected to take the life estate. Petitioner has not by instrument, word or deed waived or released her right to do so. Petitioner had not been called upon, prior to 4 May 1964, to make her election; nothing had occurred, and no one was in position, to require her to make the election prior to that date. She is claiming only what the statute gives her. She has done nothing to lead respondents to believe that she would not claim the life estate or to act on any such belief, and they have not changed their position with respect to the title at any time by reason of anything she has said or done concerning an election.

Finally, it is said that petitioner is estopped by her fraud in procuring the deed from Frederick. Her fraud in that transaction has been established. *Smith v. Smith, supra.* A person may be estopped by fraudulent conduct. Indeed, estoppel *in pais* arises only by reason of fraud, undue advantage, overreaching or unconscionable conduct. *In re Will of Covington*, 252 N.C. 546, 114 S.E. 2d 257; *Hawkins v. Finance Corp.*, 238 N.C. 174, 77 S.E. 2d 669; *Peek v. Trust Co., supra.* Petitioner is not now claiming any benefit or advantage springing from her fraud. That matter has been laid to rest, and she has paid the penalty. Re-

spondents have at no time relied on her fraud, except that Frederick made the deed by reason thereof. The deed has been set aside, and the positions of the respondents have not changed with respect to the title to land *by reason of the fraud,* except that they were improved by the judgments in favor of respondents. The fact that the litigation arose by reason of her fraud and the litigation extended her time to make the election, does not create an estoppel. A court of equity could not in fairness say to a widow: "An action, involving the property of the estate, has been instituted charging you with fraud. You may not stand on your right to contest this action and at the same time reserve your right to take under G.S. 29-30 in the event you lose. You must make a positive election as if no action were pending. You may elect to take a life estate, and surrender your right to vindicate your position in the fraud suit and your right to take whatever you may gain therein, or you may decline to so elect and take your chances in the fraud suit." Such rule might well be a vehicle of injustice. Petitioner's right under G.S. 29-30 is not derived from and has no relation to petitioner's deed transaction with Frederick. Dower was a favorite of the law. *Pridgen v. Pridgen,* 190 N.C. 102, 129 S.E. 419. Dower was an elongation of the husband's estate, and the widow held in *priority* with the heirs and those claiming under them. *Forbes v. Long,* 184 N.C. 38, 113 S.E. 575. The courts are no less concerned with the rights of a surviving spouse under G.S. 29-30.

The judgment below is

Affirmed.

SHARP, J., dissenting.   G.S. 29-30 (b) permits the widow of an intestate who is survived by only one child and no other lineal descendants to take, in lieu of her one-half share of his real estate in fee, G.S. 29-14 (1), a life estate in one-third in value of the real estate, including a life estate in the dwelling, regardless of its value, which she occupied at the time of intestate's death. Such an election is, however, subject to the condition that she make it "within one month after the expiration of the time fixed for the filing of a dissent," G.S. 29-30 (c) (1), unless "litigation that affects the share of the surviving spouse in the estate is pending." G.S. 29-30 (c) (4). If such litigation is pending, the election shall be made "within such reasonable time as may be allowed by written order of the clerk of the superior court." *Ibid.*

The majority concede that, unless litigation affecting her share in her husband's estate was pending, petitioner was required "to make her election (to take a life estate) on or before July 22, 1962 or a date shortly thereafter, depending on the date of the first publication of notice to creditors." She did not attempt to make the election in ques-

tion until May 4, 1964. Notwithstanding, the majority would permit her to elect, on the premise that litigation affecting her share in the estate was pending.

Intestate died December 11, 1961. Petitioner was appointed his administratrix December 22, 1961. On April 28, 1962, intestate's son, respondent Smith, conveyed to petitioner his one-half interest in the dwelling she was occupying at the time of her husband's death. *Prima facie,* she then owned the fee in the whole of this property. Ten days later, however, respondent instituted an action against petitioner to set this deed aside for her fraud in procuring it. On April 4, 1963, the deed was set aside. This, then, is the litigation which the majority say affected the widow's *share in the estate.* How can it be said that it affected her share *in the husband's estate* when, no matter how the fraud action terminated, she still retained the share she acquired from her intestate husband as his widow, a fee simple in one-half of the dwelling in controversy? If she should lose, the title to the realty remained as it had been transmitted to both beneficiaries by the death of the decedent. If she should win, in addition to the one-half she acquired through her husband, she had the son's share, *from the son.* The market value of the property was likewise unaffected; it remained the same, whether it was owned by two persons or by one. In no wise did this litigation affect the share which the widow derived from the husband's estate; it affected only the share of her stepson, the other beneficiary.

The majority opinion states that "any litigation which may substantially and materially affect the choice the surviving spouse is entitled to make affects the share of the surviving spouse in the estate." With this statement I would agree — provided the reference is confined to litigation growing out of transactions by the decedent in his lifetime or connected with the proper administration of his estate. Clearly a contested mortgage, a disputed account, or a pending tort action might affect the net value of the husband's estate and thereby affect the widow's election and her share in the estate within the meaning of G.S. 29-30, but not so a fraud action which arose after decedent's death as the result of the widow's efforts to acquire the share of another beneficiary of the estate. Suppose, instead of an action between the widow and the son involving the validity of his deed to her, the action had been between the son and his prior grantee in a mortgage deed and had involved the validity of the mortgage. Under the majority's rule, even that action would have extended the widow's time to make an election. Thus, the heirs might be left for years in a state of uncertainty as to when they would come into possession of their shares in the realty. Certainly the litigation with her stepson materially affected her finan-

cial interests and her *claim* to the whole property, but it did not affect the share she took, as his surviving spouse, in her deceased husband's realty, which share was a one-half interest in fee in the property now in dispute. To toll the statute while she attempted to secure the other half by fraud, with no penalty for failure, would put a premium on fraud. It is true that *favorabilia in lege sunt fiscus, dos, vita, libertas*, but surely the law will not permit even a widow to have her cake and eat it, too, under such circumstances. There is no reason to fear that the interpretation of G.S. 29-30(c)(4) for which I contend will become "a vehicle of injustice" to any widow who is not a tort-feasor.

It may be conceded, without in the least weakening the thesis of this dissent, that the evidence in respondent's action to set aside the deed made out a minimal case of fraud. Nevertheless, upon that evidence the jury found that petitioner had fraudulently secured the deed from her alcoholic stepson while acting as the administratrix of his father's (her husband's) estate. This Court, in an opinion to which there were no dissents, affirmed the judgment of the Superior Court setting the deed aside. *Smith v. Smith*, 261 N.C. 278, 134 S.E. 2d 331. The humanitarian urge to take care of widows is always strong, and the facts in this case graphically illustrate the possible disadvantages of a tenancy in common. Yet fraud is not an acceptable means of ridding oneself of the annoyance, interference, and unreasonable demands of a co-tenant nor of the risk of partition. Surely it is not for this Court, who did not see or hear the witnesses, to substitute our judgment for that of the jury in a case which we have heretofore affirmed on appeal. To do so would merely add another hard case to the quicksands of the law.

In this case petitioner simply failed to make her election to take a life estate within the time required by law. She was not, in my opinion, protected by G.S. 29-30(c)(4), which has no application to litigation resulting solely from the acts of one or more of the beneficiaries in dealing with their individual shares after the decedent's death. I therefore vote to reverse the order from which the appeal is taken.

BOBBITT, J., joins in dissent.