The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Cramer and upon the briefs and argument of counsel. The appealing party has shown good ground to reconsider the evidence. The Full Commission reverses the Deputy Commissioner's Opinion and Award and enters the following Opinion and Award.
* * * * * * * * * * *
Plaintiff's Motion of 22 March 1996 for approval of Dr. Tomaszek as her treating physician is hereby denied by the Full Commission.
* * * * * * * * * * *
The parties entered into a Pretrial Agreement dated October 20, 1994 which is incorporated by reference as if fully set forth herein. Pursuant to that Agreement, the Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties at the hearing as:
STIPULATIONS
1. Both parties are subject to and bound by the provisions of the North Carolina Workers' Compensation Act and the employer is self-insured.
2. The plaintiff's average weekly wages on June 25, 1993, the date of the alleged injury by accident, were $309.20.
3. Defendant paid benefits to plaintiff at the rate of $412.30 every two weeks during the period of June 26, 1993 through September 17, 1994. On September 28, 1994, benefits were unilaterally stopped by defendant.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission rejects the findings made by the Deputy Commissioner and makes the following:
FINDINGS OF FACT
1. The Industrial Commission has jurisdiction over the subject matter of this claim, all parties being properly before the Commission and subject to and bound by the North Carolina Workers' Compensation Act.
2. The employer-employee relationship existed between the plaintiff and the defendant NC Baptist Hospital at all times relevant to this claim.
3. Plaintiff was born March 14, 1957. Having obtained her GED, she has the equivalent of a high school degree. She has also taken some classes toward a nursing degree. She was divorced in 1990 and has no children.
4. Plaintiff's work history consisted primarily of unskilled labor. Her past jobs included work as a waitress, as a stock room clerk, and as an assembly line worker. Prior to her employment at NC Baptist Hospital, plaintiff had last worked in April, 1989, running an envelope-making machine for Tension Envelope in Winston-Salem.
5. On October 9, 1989, plaintiff was hired by NC Baptist Hospital as a part time nursing assistant to work in the Emergency Department. As a nursing assistant, she would take vital signs, and help patients dress and undress and go to the bathroom.
6. Prior to beginning work for the defendant the plaintiff had a long history of physical complaints, some apparent psychological problems and numerous surgeries.
7. On or about 5 April 1992 plaintiff transferred to the Hospital's 10th floor of Reynolds Tower where cardiology patients are treated. Her normal and usual duties consisted of taking vital signs, giving baths, changing beds, and ambulating patients. Her job required that she assist other Hospital employees in lifting patients weighing up to about 200 pounds. Her job required mostly walking.
8. In the period of her employment by the Hospital through 24 June 1993 plaintiff performed her work duties as a nurses' aide without missing any work due to lower back pain.
9. On 25 June 1993 plaintiff was called to the room of a patient, a Mr. Walker, to help move him up in bed. Mr. Walker weighed about 200 pounds. Plaintiff called to the nurses' station requesting help to move Mr. Walker. No one responded to her request. A male visitor in Mr. Walker's room then agreed to assist plaintiff in moving the patient up in his bed. When plaintiff was moving Mr. Walker up in bed, she felt a sharp pain in her lower back. The back pain almost took her breath away. This incident constituted a specific traumatic incident of the work assigned and, to the extent it resulted in disability, is compensable under the Workers' Compensation Act the same as if it had been an injury by accident.
10. Plaintiff did not mention this back injury to anyone at work that day. The next day she saw another employee, Barbara Owen, at the nurses' station and told her she had injured her back the day before lifting a patient. Plaintiff first reported her back injury to her supervisor Robin West on Wednesday, 30 June 1993. Ms. West told plaintiff to complete a Hospital occurrence report.
11. On 30 June 1993 plaintiff in her own handwriting completed and signed the occurrence report. She wrote that on 25 June 1993 she injured her back pulling Mr. Walker in Room 1017 up in his bed. On 30 June 1993 plaintiff handed the completed report to Robin West. In so doing, plaintiff substantially complied with the provisions of N.C.G.S. § 97-22 which requires an injured employee to give written notice of the occurrence of an accident to her employer within 30 days following an accident.
12. Plaintiff's lower back pain gradually grew worse following her 25 June 1993 accident such that by 29 June 1993 she became unable to work due to severe lower back pain resulting from her workplace injury on 25 June 1993.
13. On 30 June 1993 plaintiff first sought medical treatment for her symptomatic back pain from the Hospital's orthopedic surgeon, Walton Curl. Plaintiff reported to Dr. Curl that she injured her back lifting a patient on 25 June 1993 and had had back pain since then. Dr. Curl found mild muscle spasm present along with tenderness to the low back and diagnosed her back injury as an acute lumbosacral strain. He prescribed a course of physical therapy, gave her a muscle relaxant and took her out of work.
14. On 30 June 1993 the Hospital's risk management adjuster, Perry Crouch, talked with Robin West who reported to Mr. Crouch plaintiff's claim of a back injury on lifting a patient on 25 June 1993 and plaintiff's filling out the occurrence report. Mr. Crouch on or about 30 June 1993 interviewed plaintiff concerning the events of 25 June 1993. Following his conversations with plaintiff and Ms. West, and his review of the occurrence report, Mr. Crouch did not have any reason to disbelieve plaintiff's statements concerning the events of 25 June 1993 and her back injury.
15. On 9 July 1993 Mr. Crouch completed an I.C. Form 19 "Employer's Report of Injury to Employee" in his own handwriting. In this Form 19 Mr. Crouch reported that the plaintiff immediately reported to her supervisor that on 25 June 1993 she tried to move a patient and felt sharp pain in her lower back sustaining a back strain injury. On or about 9 July 1993 the Hospital mailed or transmitted this I.C. Form 19 to the Industrial Commission which received the form on 13 July 1993. In so doing, the Hospital complied with the statutory requirement of N.C.G.S. § 97-92 which requires that the employer promptly send a written report of accident to the Commission.
16. On 13 July 1993 plaintiff was evaluated by the Hospital's physical therapist who on palpation found plaintiff to have moderate muscle spasms over her right lumbar paraspinal muscles and moderate to severe tenderness of the lumbar area of her back and right L3 transverse processes.
17. On or shortly before 16 July 1993 the Hospital's worker's compensation adjuster Mr. Crouch completed in his own handwriting an I.C. Form 21 "Agreement for Compensation for Disability" (hereinafter "Form 21 Agreement").
18. On 16 July 1993 the Hospital presented the completed Form 21 Agreement as an agreement to the plaintiff who on that date signed the Form 21 Agreement and in reliance thereupon accepted from the Hospital worker's compensation total disability compensation benefits in the amount of $329.84.
19. As of 16 July 1993 the Hospital agreed with every statement contained in the Form 21 Agreement.
20. On 16 July 1993 the Hospital and the plaintiff reached an agreement in regard to worker's compensation benefits to the plaintiff under the North Carolina Workers' Compensation Act, and they entered into a written memorandum of their agreement as contained in the completed Form 21 Agreement. The Hospital and the plaintiff reached this agreement and entered into the Form 21 Agreement notwithstanding the fact that the Hospital did not sign the Form 21 Agreement it had prepared and presented to the plaintiff, who did sign the Form 21 Agreement.
21. A true copy of the parties' agreement, that is, the parties' 16 July 1993 Form 21 Agreement, is contained in the Commission's file in this matter and was introduced into evidence before Deputy Commissioner Cramer.
22. N.C.G.S. § 97-17 allows settlements made between the employer and employee. That statute provides "A copy of such settlement agreement shall be filed by employer and approved by the Industrial Commission." (Emphasis supplied.) The statute mandates that the employer file the Form with the Commission and mandates that the Commission approve (or disapprove) the agreement.
23. The Hospital did not file a copy of the parties' Form 21 Agreement with the Industrial Commission.
24. N.C.G.S. § 97-82 provides that where the employer and employee reach an agreement in regard to compensation under the Act, a memorandum of the agreement in the form prescribed by the Commission shall be filed with the Commission.
25. The Commission's Form 21 is the memorandum of agreement form prescribed by the Commission to be used by the employer in complying with the provisions of G.S. § 97-82.
26. The reason the Hospital did not file the parties' Form 21 Agreement with the Commission is unknown.
27. The Hospital did not submit the parties' Form 21 Agreement to the Commission until the 20 October 1994 hearing.
28. N.C.G.S. 97-6 provides that no contract or agreement or rule or regulation or other device shall in any manner operate to relieve an employer of any obligation created by the Act.
29. I.C. Rule 601 requires an employer which denies a claim to promptly notify the employee in writing detailing the facts which justify the denial.
30. The Hospital's failure to promptly file the parties' 16 July 1993 Form 21 Agreement with the Commission violated the provisions of both N.C.G.S. 97-17 and 97-82.
31. N.C.G.S. 97-82 provides that where the employer and employee's memorandum of agreement is not filed with and approved by the Commission, then such agreement shall be voidable by the employee.
32. Plaintiff has chosen not to have the Commission void the parties' 16 July 1993 Form 21 Agreement.
33. On 8 February 1994 the Commission received plaintiff's I.C. Form 33 request for hearing seeking an order compelling the Hospital to pay for certain diagnostic testing by Chapel Hill, N.C. orthopedic surgeon Stephen Grubb, and to approve Dr. Grubb to assume plaintiff's care as allowed by N.C.G.S. 97-25. Plaintiff's filing of the Form 33 hearing request with the Commission constitutes the filing of a claim for benefits under N.C.G.S.97-24.
34. In this claim the Hospital is bound by the provisions and stipulations contained in the parties' 16 July 1993 Form 21 Agreement and is estopped from denying the following: (1) that plaintiff sustained a compensable lower back injury on 25 June 1993; (2) that disability resulting from said injury began on 29 June 1993; (3) that the Hospital pay disability compensation at the rate of $206.14 per week beginning 29 June 1993 and continuing for necessary weeks, that is, continuing until plaintiff's disability from her injury ends.
35. The Commission hereby approves the parties' 16 July 1993 Form 21 Agreement.
36. Plaintiff continues to suffer from severe disabling lower back pain resulting from her 25 June 1993 lower back injury.
37. Plaintiff's disability resulting from her 25 June 1993 back injury continues.
38. Plaintiff is entitled to reinstatement of her weekly disability compensation benefits effective 18 September 1994.
39. In December 1993 Dr. Grubb recommended plaintiff undergo additional diagnostic testing including a lumbar myelogram, post-myelogram CT scan, a lumbar discogram, a post-discogram CT scan, and a psychological evaluation by a psychologist who works with Dr. Grubb. These tests reasonably tend to give relief or effect a cure or lessen plaintiff's period of disability.
40. Plaintiff's N.C.G.S. 97-25 request to approve Dr. Grubb to assume her medical care for her 25 June 1993 back injury should be allowed. The Hospital should pay for the diagnostic tests recommended for plaintiff by Dr. Grubb because they would help in effecting a cure or in giving relief.
* * * * * * * * * * *
Based upon the foregoing stipulations and Findings of Fact, the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. On June 25, 1993, plaintiff sustained an injury by accident in that she suffered a specific traumatic incident when she felt sharp pain in her lower back while lifting a patient.
2. Defendant is estopped from denying its agreements and stipulations contained in the parties' 16 July 1993 settlement agreement. Smith v. Smith, 265 N.C. 18, 143 S.E.2d 300 (1965);Biddix v. Rex Mills, Inc., 237 N.C. 660, 75 S.E.2d 777 (1953); N.C.G.S. 97-18.
3. Defendant failed to promptly file with the Commission the parties' 16 July 1993 Form 21 Agreement and thereby violated defendant's statutory duties under N.C.G.S. 97-17 and 97-82.
4. The parties' 16 July 1993 Form 21 Agreement is hereby approved. N.C.G.S. 97-17 and 97-82.
5. The plaintiff's total disability resulting from her 25 June 1993 lower back injury continues. N.C.G.S. 97-29.
6. Defendant is entitled to a credit for all weekly disability compensation paid to plaintiff in the period 26 June 1993 through 17 September 1994. N.C.G.S. 97-42.
7. The diagnostic testing recommended by Dr. Grubb reasonably tends to give relief, effect a cure or lessen the period of plaintiff's disability. N.C.G.S. 97-25.
8. Plaintiff's request to approve Dr. Grubb to assume her medical care is approved. N.C.G.S. 97-25.
* * * * * * * * * * *
The foregoing stipulations, findings of fact and conclusions of law engender the following:
AWARD
1. Subject to an attorney fee, defendant shall pay plaintiff total disability compensation benefits weekly commencing 29 June 1993 at the rate of $206.14 per week and continuing until further order of the Commission, subject to the credit provided above in Conclusion of Law No. 6.
2. Defendant shall pay for the diagnostic testing recommended by Dr. Grubb and pay Dr. Grubb for his medical treatment of plaintiff as part of this claim.
3. An attorney's fee in the amount of twenty-five percent of the compensation awarded herein is hereby approved for plaintiff's counsel, the accrued portion of the fee shall be deducted from the accrued benefits, and thereafter, defendants shall forward every fourth check of compensation to plaintiff's counsel until plaintiff is no longer entitled to compensation benefits.
4. Defendant shall pay all costs.
This 6th day of May 1996.
 S/ _________________________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ _________________________ COY M. VANCE COMMISSIONER
CONCURRING IN RESULT ONLY:
S/ _________________________ DIANNE C. SELLERS COMMISSIONER